JONATHAN C. RANDALL AND ANOTHER *vs.* JOSEPH B. LATHAM.

*T* in 1855 conveyed to *L* a piece of land adjoining the grist mill of the latter, reserving the right to draw water from the ditch of *L*'s mill for his factory below on the same stream when *L* was not letting off water through his mill sufficient for the factory, *L* to keep a ten inch spout at the bottom of the ditch for *T*'s use and to which he should have access at all times. *T* had no previous interest in the ditch or the land through which it ran. In 1866 *T* conveyed his factory, with all his rights under the above provision, to the petitioners, who in 1868 brought a bill in equity to compel *L* to put in the spout, which he had never done. Held,

1. That the respondent, by accepting the deed of *T*, assumed the duty to put in and keep up the spout.

2. That the right to the water from the respondent's ditch was not a mere license to *T* to use the water so long as he owned the factory below, but an easement permanently attached to the factory and which passed to his grantee.

3. That the right to the spout was not barred by a non-user for any length of time that would not have been sufficient to bar the right to the entire easement.

4. That the agreement of the respondent to put in the spout, though standing upon an implication from his accepting the deed of *T*, might perhaps reasonably be regarded as an agreement in writing by reason of the statement of the undertaking in the deed.

5. But that, however this might be, the agreement if originally within the statute of frauds was taken out of it by performance on the part of *T* in conveying his land to the respondent.

6. That it should be shown that the spout was needed to supply sufficient water for the factory.

7. That, this being shown, a court of equity would compel the respondent to put in the spout.

BILL IN EQUITY, to compel the specific performance of an

agreement of the respondent with the petitioners' grantor with regard to water from the respondent's raceway for the petitioners' mill; brought to the Superior Court in Windham county.

The respondent was the owner of a water privilege on a stream known as Round Brook, with a grist mill and raceway leading to the same, and, on the 20th of April, 1855, took from one Hiram Thomas a conveyance of a tract of thirty acres adjoining his mill, the grantor remaining the owner of a factory a little below on the same stream. The deed from Thomas to the respondent contained the following provision: " Reserving and excepting the following privileges, to wit: the privilege of the right of way, in common with the said grantee, in the lane from the said bridge to the said turnpike, nearly eleven feet on the westerly side of said lane, making the whole width of said lane twenty-two feet; and also, the said grantor is to have the privilege of drawing the water from the ditch of said Latham's grist mill, at all times when the said Latham, or his successor, is not using sufficient water for the accommodation of the 'factory below said Latham's mill, and the said Latham and his successor are to keep a spout ten inches square in the inside, at the bottom of said ditch, to which the said grantor shall at all times have access for the purpose of drawing water as aforesaid."

On the 9th day of February, 1866, Thomas conveyed his factory and the land connected with it, to the petitioner Randall, the deed expressly conveying " all rights and privileges specified in the deed of the grantor to said Joseph B. Latham, dated April 20th, 1855." Randall afterwards conveyed one half the property embraced in his deed to the other petitioner, Harris.

The present petition was dated August 10, 1868. Down to this time the respondent had never put in the spout provided for in the deed of Thomas to him, and on the application of the petitioners, after they became the owners of the Thomas factory, refused to put it in and denied their right to require him to do it. The petitioners by their suit sought to compel him to put it in, and claimed the right, under their deed

from Thomas, and as owners of the factory bought of him, to draw water for the factory from the respondent's ditch, and by a spout put in and maintained by him, and to which they should have constant access and over which they should have control. The ditch itself was never owned by Thomas, and he had no interest in the same beyond that acquired by the provision of his deed to Latham, and the petitioners had no interest beyond that acquired by Thomas's deed to Randall.

Upon these facts the case was reserved for the advice of this court.

*H. Johnson* and *Pratt,* for the petitioners.

1. A deed poll, when accepted by the grantee, becomes the mutual act of the parties ; and a stipulation in the instrument to do a certain act, or grant a certain privilege, on the part of the grantee, is, by force of his acceptance, a valid and binding contract on his part, the specific performance of which may be compelled by the grantor or those owning his interest. 2 Hilliard Real Prop., ch. 83, § 12, and note ; *Goodwin* v. *Gilbert,* 9 Mass., 510 ; *Phelps* v. *Townsend,* 8 Pick., 392 ; *Felch* v. *Taylor,* 13 id., 133 ; *Newell* v. *Hill,* 2 Met., 180 ; *Townsend* v. *Ward,* 27 Conn., 610 ; *Hinsdale* v. *Humphrey,* 15 Conn., 431.

2. The words of the grant constitute a contract, if not a covenant, between the grantor and grantee relative to the use of the water as between the mills of the grantor and grantee. Under this deed the grantor, Thomas, took a certain additional easement or privilege, and his interest in that easement is assignable and descendible without the use of the words " heirs and assigns." The case of *Kennedy* v. *Scovil,* 12 Conn., 317, decides that the intention of the parties, and the purpose for which the easement is granted, are to be considered in such a case. ·Applying this test, it is seen that this water is to be drawn through the spout " for the accommodation of the factory below, " so that it was a right attached to the land and not to the person, and therefore the grantor had an assignable interest therein. The intention of the parties is perfectly clear to grant and receive an easement which should

permanently attach to the land. This is shown by the language of the deed. On any other construction Thomas would not receive the full consideration for his deed to Latham. The latter has entered into the enjoyment of the premises, and now refuses to perform his part of the contract. This is not equitable.

3. The right of the petitioners being established, a court of chancery will make it effectual by a decree adapted to that purpose. The remedy prayed for in the bill is the appropriate one—a decree enjoining a specific performance of the contract. Story Eq. Jur., §§ 736*a*, 751.

*Penrose*, with whom was *Phillips*, for the respondent.

1. The clause in the deed from Thomas to Latham relative to the spout, does not amount to a covenant or promise on the part of Latham ; because on the face of it it does not purport to be his agreement, and because it does not relate to the subject matter of the grant, out of which a covenant or promise might be presumed to grow. *Hinsdale* v. *Humphrey*, 15 Conn., 431 ; 1 Swift's Dig., 358.

2. If an agreement can be presumed, it is a bare license to Thomas for so long a time only as he should continue to own the mill for the accommodation of which the reservation was made. The language of the grant by Thomas to the petitioners shows that he so understood it.

3. The petitioners in their bill do not aver, nor does the finding show, any cause for the intervention of the court. The spout is for water when Latham does not use enough to run the Thomas mill, and it is not averred or claimed that the petitioners require more than passes to their mill without the spout.

4. If a promise is presumed it was made in 1855. There it has rested. Its performance may well be regarded as waived by the parties. At any rate its enforcement is barred by the statute of limitations. Story Eq. Pl., §§ 503, 506, 751.

5. It was a mere chose in action and could not be assigned to the petitioners. *Mayor of Congleton* v. *Pattison*,

10 East, 130; *Mitchell* v. *Warner*, 5 Conn., 498. The statute of 1864, being passed subsequent to the making of the supposed contract, does not affect it.

6. The agreement is within the statute of frauds. The promise of Latham, if one can be inferred, rests merely in an implication from his acceptance of the deed from Thomas, and is not in writing.

·PARK, J. In the deed from Thomas to the respondent the grantor reserved from the premises conveyed the right to draw a certain quantity of water at all times when the respondent or his successor should not be using sufficient water for·the accommodation of the factory below. The grantor owned a factory below the mill deeded to the respondent, and the reservation was for the benefit of that factory. There is a provision in the deed in connection with the reservation that the respondent and his successor should keep a spout ten inches square at the bottom of the ditch leading to his grist mill to which the grantor should at all times have access for the purpose of exercising the right reserved in the deed. The reservation taken in connection with this provision is in effect a reservation of the right to draw water through a spout ten inches square. The right reserved is not otherwise limited or defined. That right was never sold to the respondent, but was subsequently transferred to the petitioners, and is now owned by them in as ample a manner as it formerly was by Thomas. But the deed purports to require the respondent to put in the spout upon land not conveyed, and the question is, whether a court of equity can compel him to do it under the circumstances of the case. That the respondent by accepting the deed containing this provision thereby agreed to perform this duty there can be no doubt. The case of *Hinsdale* v. *Humphrey*, 15 Conn., 431, is in point. See also *Townsend* v. *Ward*, 27 Conn., 610; *Felch* v. *Taylor*, 13 Pick., 133; *Goodwin* v. *Gilbert*, 9 Mass., 510; *Burnett* v. *Lynch*, 5 Barn. & Cress., 589. This duty was a part of the consideration of his deed. The respondent has received full compensation, and it is difficult to see why he is not bound to

Randall *v.* Latham.

perform it.   It will be seen that the agreement merely pre-
scribes the mode of exercising the right reserved.   Without
the agreement Thomas would have had the right to draw the
water at some proper place on the land conveyed, but in order
that the convenience and interest of both parties might be
promoted it was agreed that the orifice should be placed at the
bottom of the ditch leading to the respondent's grist mill.  The
land of the respondent was selected for the purpose instead
of the land conveyed.

The reservation of the right to the water would have  car-
ried with it an easement in the land conveyed for the purpose
of drawing the water, on the principle that where a  right is
reserved or conveyed  what is necessary for the enjoyment of
the right, and without which the right would be useless,
passes or is retained by implication.   And again, if the
agreement had not been made no doubt Thomas would have
expressly reserved a place for the orifice.   The agreement of
the respondent prevented his doing this, and shall the respon-
dent be permitted now to say that he will not perform his
agreement when he has obtained the land of Thomas by
means of it, and has been and is now in the enjoyment of the
land as his own ?   If *A* agrees to convey to *B* a tract of land
in consideration that *B* will convey to *A* an  easement in cer-
tain other lands, and *A* fulfills his part of the agreement and
*B* goes into possession of the land, there can be no doubt that
a court of equity would compel *B* to perform his part of the
agreement.   The respondent therefore can derive no benefit
from the fact that the spout was agreed to be placed upon
land that Thomas never owned.

But it is said that the agreement was only a license to Thom-
as to draw the water for so long a time as he should own the
mill below.   This claim is in conflict with all the facts of the
case.   The right to the water is reserved without limitation
as to time.   It was made for the benefit of the mill below,
and manifestly was designed to be appurtenant to it.   It
would not only be beneficial so long as Thomas should own
the mill, but would enhance its value to some extent when
sold.   If the right to the water was designed to be a perma-

nent annexation to the mill below, the right to the spout on the respondent's land was designed to be equally as permanent. The one could not be beneficial without the other.

It is further claimed that if a right to the spout ever existed, it has been waived and abandoned. But waiver and abandonment are questions of fact for the court below to determine. No such facts have been found.

Again it is claimed that the agreement was a mere chose in action, and did not pass by the deed from Thomas to the petitioners. The deed to the petitioners refers to the deed from Thomas to the respondent, and expressly conveys all the rights and privileges specified in that deed that Thomas had the right to convey. The right to the water was reserved by that deed. That right was manifestly conveyed to the petitioners. By that deed Thomas acquired an easement in the respondent's land to have the spout. That right was an equitable interest in the land and was also conveyed. By that deed the respondent agreed with Thomas to put in the spout. The act of putting in the spout is intimately connected with the easement, so much so that the easement could not be enjoyed without the performance of this duty. Thomas had no right to go upon the respondent's land and dig up the soil for the purpose of inserting the spout, neither have the petitioners. The spout was agreed to be placed in the bottom of the ditch leading to the respondent's grist mill. The respondent has the right to select the place in the ditch where it shall be put, and to attend himself to the putting and keeping of it there. For aught that we can discover this may be an *important* qualification of the right given to Thomas to have it there. A conveyance therefore of the equitable easement carried with it the privilege of the respondent inseparably connected with it. Again, the promise of the respondent to put in the spout cannot be regarded as a separate and independent promise, even if it is a duty onerous to be performed. He agreed not only to grant an easement in his land, but to put it in a condition to be enjoyed. An easement in that condition he promised Thomas in consideration for the land he conveyed. An equitable

easement in that promised condition, Thomas conveyed to the petitioners. Again, if the promise to put in the spout was a chose in action, it was transferred to the petitioners by virtue of the statute of 1864. That statute applies to assignments existing when the act was passed as well as to those that should thereafter be made.

Again, it is claimed that the statute of limitations has barred the claim. But fifteen years did not intervene between the giving of the deed by Thomas to the respondent and the bringing of this petition. Thomas acquired an equitable interest in the respondent's land that could not be extinguished by lapse of time short of fifteen years. The agreement to put in the spout is intimately connected with the easement, as we have seen, so much so that this obligation remains so long as the easement continues. It is like the case of a promise by one to convey to another certain lands. If the agreement is valid and binding, so that the promisee can claim the land, then so long as the right to the land continues in the promisee, so long the obligation remains upon the promisor to perform the duty of executing the deed. It is all one agreement. A part of it cannot be barred by the statute while the rest remains in force.

Again, it does not appear that the spout has been needed to supply the lower mill with water. By the terms of the agreement this fact must appear before complaint could be successfully made. If the respondent has supplied the lower mill at all times with water, he has done all that he was bound to do, and there has been no default, and consequently no bar by the statute.

Again, it is claimed that the agreement is within the statute of frauds, on the ground that it was not in writing. It might well be questioned whether the fact that the respondent claims title under a deed from Thomas in which the terms of the agreement are expressed in writing, is not sufficient to take the case out of the statute. But however this may be, the case of *Eaton* v. *Whitaker*, 18 Conn., 222, and other cases that might be cited, fully show that there is nothing in this claim. Thomas fully performed his part of the

agreement at the time of the transaction between the parties, and nothing remains but performance on the part of the respondent. This is sufficient part performance to take the case out of the statute.

It is further claimed that the petitioners cannot sustain their bill because the finding does not show that the spout is needed to supply the lower mill with water. We think the respondent is right in this claim. But the want of a finding upon this subject may have been owing to oversight on the part of counsel in neglecting to offer evidence upon a point not in dispute between the parties, and we think the proper course therefore is to advise the Superior Court that if it shall be found on a further hearing of the case that the spout is needed to supply the petitioner's mill with water, the prayer of the petition should be granted. And we so advise.

In this opinion the other judges concurred.