JAMES J. GOODWIN *vs.* WILLIAM HAMERSLEY, TRUSTEE.

First Judicial District, Hartford, March Term, 1897. ANDREWS, C. J.,
    TORRANCE, FENN, BALDWIN and HALL, Js.

In 1828 *A* conveyed in fee simple two adjoining pieces of real estate, one
    to *B*, now owned by the plaintiff, and one to *C*, now owned by the
    defendant. These conveyances were executed on the same day and
    were apparently parts of one transaction. Each deed conveyed also
    another described piece of land in the rear which was " to be improved
    in common with the grantor" and the two grantees "as a common
    back yard," unincumbered by any building or other impediment.
    *Held* that this prohibition against incumbrances on the back yard,
    when read in the light of the context, was not intended to create re-
    ciprocal negative easements running with the land, but to describe the
    use to which this tract was to be put.
Upon the walls of an area-way which had existed for more than fifty years
    in the rear of the defendant's building and which included a portion
    of the land described in 1828 as a common yard, the defendant erected,
    in 1892, a small one-story addition, which the plaintiff sought to have
    removed by injunction. It appeared that this addition shut out some
    light from the basement and first floor of the plaintiff's building, but
    it was not found that it did any damage to the land of the plaintiff
    which was included in the common yard. *Held* that even if recipro-
    cal negative easements were created by the deeds, they were confined
    to the land conveyed for a common back yard; and that inasmuch as
    the plaintiff's building stood on land not within that yard the relation
    of dominant and servient estates did not exist.

[Argued March 3d—decided March 23d, 1897.]

SUIT to restrain the defendant from maintaining an addi-
tion to his building in a yard claimed to be owned by the
parties in common, brought to the Superior Court in Hart-
ford County and tried to the court, *George W. Wheeler, J.;*
facts found and judgment rendered for the plaintiff, and
appeal by the defendant for alleged errors in the rulings of
the court. *Error and judgment reversed.*

The case is sufficiently stated in the opinion.

*Arthur F. Eggleston* and *Charles H. Briscoe,* for the appel-
lant (defendant).

*Charles E. Perkins,* for the appellee (plaintiff).

ANDREWS, C. J.   On the 11th day of October, 1828, Burrage B. Dimock and Frederick Marsh were the owners of a tract of land in the city of Hartford at the corner of State and Main streets, fronting southerly on State street and westerly on Main street.   On that day they conveyed the easternmost part of this tract to Edward P. Cooke; that is to say, a piece fronting southerly on State street about twenty feet and fifty feet deep, in fee simple absolute.   This piece of land is now No. 10 State street.   And by the same deed another piece of land directly in the rear, *i. e.*, northerly of the one so granted, was conveyed, which is described in said deed as follows: "Also one other piece of Land to be improved in common with the Grantors and Oliver D. Cooke, containing all the land between the said Smith's line & Jabez & Lucy Ripley's line on the east, and of the grantors land and land this day conveyed to Oliver D. Cooke on the north and west, and the above described building lot on the south— this last piece to be improved as a common back yard by the Grantors, Grantee, and Oliver D. Cooke unincumbered by any building except so much as may be necessary to be improved for part of a back House, which shall no part of it extend more than fifteen feet south of the northeast corner of a common yard, which is described as follows: to contain all the land lying southerly of a line drawn straight with the dividing line between Oliver D. Cooke & Caleb Pond's Brick Stores to said Ripley's west line, and extending within fifty feet westerly of Main Street, and southerly within fifty feet of State Street, together with the improvement of a well of water situated on the said extended line between said Cooke & Pond, with the improvement in common of a Gangway twelve feet wide to be opened by the Grantors in the rear of said building lots to Lee Street, all of which common yard & Gangway & well shall be and remain for the mutual use & benefit for the Grantors, Grantee & said Oliver D. Cooke unobstructed by any building or other impediment whatsoever, and all necessary expenses in keeping said well of

water & Gangway & Common Yard in repair shall be borne at the mutual expense of the several proprietors."

And on the same day, and apparently as a part of the same transaction, the said Dimock and Marsh conveyed to Oliver D. Cooke another part of their said land, fronting in part southerly on State street and in part westerly on Main street, and fifty feet deep from said streets. This piece was conveyed to said Oliver D. Cooke in fee simple absolute. The portion of this piece owned by the defendant is now No. 6 State street. The same deed conveyed another piece of land lying in the rear, i. e., northerly and easterly of the one so granted, which is described in said deed as follows:—

"Also another piece of land included by extending the north line of the above described piece eastwardly until it meets the line of land of Edward P. Cooke, thence southwardly by his line to the northwesterly corner of his building lot, thence westerly and northerly in the rear of the above described land to the said line extended—the last described piece of land is reserved to be improved as a common yard by the grantors, grantee & Edward P. Cooke, together with all the land lying between a straight line drawn in continuation of a dividing line between the brick stores of said Oliver D. Cooke & Caleb Pond to Ripley's west line and the land above described as conveyed to Oliver D. Cooke, and Edward P. Cooke, which said pieces of land together with a gangway twelve feet wide to be opened by the grantors are to be improved by the said Grantors & Grantees, together with a well of water situated on the north line extended as aforesaid for their mutual improvement & benefit, and no building or other incumbrance shall at any time be placed on said yard & gangway, except a back House to be placed at the northeasterly corner of said Yard, which is not to be extended more than fifteen feet southerly from the northeast corner thereof, and all necessary expenses in keeping said well of water & Gangway & common yard in repair shall be borne by the several proprietors."

It is obvious that both these deeds must be read in order to get at the precise title and interest of either grantee in

the land described. And reading these deeds together one thing is certain: that the grantors intended to establish a common back yard for the use of themselves and each of the grantees. Putting together the description in both deeds, it shows that the common back yard so established was irregular in shape, and was bounded on the north by " a line drawn straight with the dividing line between Oliver D. Cooke & Caleb Pond's Brick Stores to said Ripley's west line," east by land of Norman Smith and the Ripleys; south by a line fifty feet from and parallel to the north line of State street, and west by a line fifty feet from and parallel to the east line of Main street, with a gangway twelve feet wide extending northerly from said piece to Lee street, (now known as Kinsley street). It included the land mentioned in the parts of the deeds to Edward P. Cooke and Oliver D. Cooke which we have recited, and other land of the grantors. But it did not include either of the pieces of land first named in said deeds. The deed to Edward P. Cooke does not convey to him an absolute title to the land so described, but only a qualified title thereto; that is, a title subject to the right in the grantors and Oliver D. Cooke to use the land for a back yard in common with him, the said Edward P. Cooke. Nor does the deed to Oliver D. Cooke convey to him an absolute title to the land so described, but only a qualified title; that is, a title subject to the right in the grantors and the said Edward P. Cooke to use the said land for a back yard in common with him, the said Oliver D. Cooke; and each of these deeds reserves the right to the grantors to use the land described for a back yard in common with both the grantees. And these deeds also convey to the said Edward P. Cooke and Oliver D. Cooke, the right to use the said other land of the grantors and the gangway for a back yard in common with the grantors and with each other.

The land so conveyed to Edward P. Cooke has come to and is now owned by the plaintiff. The land so conveyed to Oliver D. Cooke has been subdivided into three tenements, one part of which has come to and is now owned by the defendant. There was no evidence showing whether or not

the mutual rights of Edward P. Cooke and Oliver D. Cooke in the common back yard have been changed by any of the *mesne* conveyances.

In 1832 a fire destroyed all the buildings on the lands conveyed in fee to Edward P. Cooke and Oliver D. Cooke by by said deeds. Shortly thereafter other buildings were erected in their present form. These buildings were somewhat over fifty feet in depth. They have remained so to this time. At the time these buildings were erected, or soon thereafter, an area-way was excavated at the rear of each of them to the same depth as the basement, of the full width of the building and extending eight or nine feet further to the rear, and walled in. At the rear end of this area-way there were steps leading down by which access was obtained to the cellar under the said buildings, and to and from said cellar and said back yard. The area-way had been used also in supplying light to the basement. The use of the said area-way in the rear of the defendant's building, in the manner and for the purposes aforesaid, had been exclusive, uninterrupted and open, has continued from 1832 down to 1892, and the defendant has at all times treated the area-way as a part of his own property. On April 9th, 1892, he caused the erection of a building one story high, eight feet and one inch long by five feet and one inch wide, on the foundations of this area-way. This suit was brought as soon as it was definitely known that the defendant would not remove the building.

It is not found that the small building so erected by the defendant did any damage to the land of the plaintiff which is included in the said common yard. It is claimed, and the court finds, that the said building did do damage to other land of the plaintiff not included in said common back yard, by shutting out the light from the basement and the first floor of a store thereon. It is for the damage so done that this suit was brought; and it was to prevent the continuance of such damage that the court rendered the judgment from which this appeal was taken.

The plaintiff insists that these deeds in respect to the sec-

ond piece of land conveyed in each, create reciprocal negative easements that no building shall be erected thereon ; and that these easements run with the land. We do not stop here to discuss this claim. Such easements, if they exist, are of a freehold interest and can be created only by grant under seal. The grant of these easements if there is one, must be found in the language of the deeds which we have set out. In it must be found the foundation of the plaintiff's right, and in it is the limit of the defendant's liability. If it be conceded that the language of these deeds creates such easements as the plaintiff claims, it is certain that those easements extend no further than the land therein conveyed. They extend no further than to the land conveyed for a common back yard. No part of the defendant's land is by that language made servient, other than what is therein named ; and it is made servient to no part of the plaintiff's land except what is therein specified. And no land of the plaintiff or of the defendant is named in this part of these deeds, except that which forms the common back yard. It seems to us that this judgment is erroneous, for the reason that it restricts the defendant in the use of his land in favor of certain land of the plaintiff to which the defendant's land is not servient. The force of the plaintiff's argument is that these negative easements are reciprocal; that is, that his land is servient to the land of the defendant to the same extent that the land of the defendant is servient to his own. The plaintiff's building which he claims is injured by the one that the defendant has erected, is on land not within the common back yard, and so on land neither dominant nor servient to the land of the defendant. If this is so, by what right does the plaintiff have an injunction to restrain injury to a building on a part of his own land, to which the land where the defendant has erected the building complained of is not servient? Or, if it is otherwise, how can the plaintiff rightfully have a building on land which is under a perpetual easement that no building shall be erected on it? Is the plaintiff violating the very covenant which he is seeking to enforce? Upon either alternative it seems to us the plaintiff

is not entitled to have an injunction.   As affecting that piece
of land the defendant was under no equitable duty to abstain
from building on his own land.

But we are unwilling to admit that the plaintiff's claim
in respect to reciprocal easements is correct.   Negative ease-
ments by which the owner of lands is restricted in their use·
in favor of other lands not owned by him, can only be created
by covenant, or by exception, limitation, or condition in the
conveyance under which he derives his title.   *Trustees, etc.*,
v. *Lynch*, 70 N. Y. 440, 448 ;  *Clark* v. *Devoe*, 124 id. 120 ;
Washburn on Easements, 24.   It is true that the acceptance
of a deed containing the reservation of an easement in the
land granted, may sometimes be held to be a covenant by the
grantee with the grantor that the easement exists.   *Randall*
v. *Latham*, 36 Conn. 48 ;  *Chappell* v. *N. Y., N. H. & H.
R. R.*, 62 id. 195, 205 ;  *Emerson* v. *Mooney*, 50 N. H. 315.
It might well be said that the reservations in the deed from
Dimock and Marsh to Edward P. Cooke, having been ac-
cepted by the grantee, created a covenant between them in
respect to the thing reserved ; and in like manner that the
reservations in the deed from the same grantors to Oliver
D. Cooke, having been accepted by him, created a covenant
between them.   But in what way is a covenant shown be-
tween Edward P. Cooke and Oliver D. Cooke ?   This, how-
ever, is not the only difficulty in the case, and perhaps not
the most serious one.   If there is a covenant creating such
restrictive easements it must be shown by apt words, and
words which fairly interpreted show a clear intent to create
such an easement.   " It is only by the use of plain and di-
rect language of the grantor, that it should be held that he
created a right in the nature of an easement and attached it
to one parcel as the dominant estate and made the other ser-
vient thereto for all time."   *Clark* v. *Devoe*, 124 N. Y. 120,
126 ;  Washburn on Easements, 52 ;  *Polson* v. *Ingram*, 22 S.
Car. 541.

There is no doubt that Dimock and Marsh, by the lan-
guage which is above recited in their deeds to Edward P.
Cooke, intended to establish a common back yard, as has

been pointed out. That negative easements were created by these deeds is shown, if at all, by a process of interpretation which seems to us wholly inadmissible. In the first of said deeds the grantors use this sentence in reference to the land conveyed: " This last piece to be improved as a common back yard by the grantors, grantee, and Oliver D. Cooke, *unincumbered by any building except* " etc. In another place in said deed the grantors use, in respect to the land being conveyed, this language: " All of which common yard and gangway and well shall be and remain for the mutual use and benefit of the grantors, grantee and said Oliver D. Cooke, *unobstructed* by any building *or other impediment whatsoever;* and all necessary repairs " etc., etc. And in the second of said deeds the grantors use, in respect to the land therein being granted, after describing the several pieces of land which are to be included in the common yard, this sentence : " Which said pieces of land, together with a gangway twelve feet wide to be opened by the grantors, are to be improved by the said grantors and grantees, together with a well of water situated on the north line extended as aforesaid, for their mutual improvement and benefit, *and no building or other incumbrance shall at any time be placed on said yard and gangway.*" From these sentences the plaintiff selects the words which we have italicised, and argues that by these words the grantors created the negative easements which he claims. We cannot agree with him. In each instance the words selected are only the part of a sentence, and in each instance the whole sentence is apt and significant in describing the back yard. Buildings and other incumbrances were forbidden on said back yard, not to create negative easements, but to describe the use to which the back yard was to be put. It will usually happen that a part of a sentence when read alone will convey a meaning different from that which the whole conveys. This is not the way to get at the meaning of any writing. In the construction of writings it is not allowable to take words out of their connection. Their meaning is to be ascertained from the whole read together. In these deeds the whole writing intended to estab-

lish a common back yard. To carry out that purpose the grantors forbade the erection of buildings, because a building would probably interfere with the common use. For the purpose of establishing a common back yard negative easements were not necessary. We do not discover in the deeds any intent on the part of the grantors to create such easements.

There is error and the judgment must be reversed.

In this opinion the other judges concurred.