CHARLES F. SIMONDS vs. WILLIAM H. SHIELDS ET UX.

Second Judicial District, Norwich, May Term, 1899. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The mere fact that the wall of a house is built up to the dividing line
does not constitute it a party wall, so that the adjoining proprietor
can build his timbers into and rest them upon it.

If such an easement is claimed by grant, the language of the grantor to
that effect should be plain and direct.

Under a deed which gave B the right to use A's wall "to build against
or upon" if he wished, the defendants, B's successors in title, claimed
the right to build their house timbers into the wall of the plaintiff
(A's successor in title) and have them supported by it. Held that
another deed executed by B to A at the same time and in respect
to the same subject-matter, wherein B reserved "the right to build
on the foundation wall which A may build up to set his house upon,"
was admissible in behalf of the plaintiff, on rebuttal, to aid in con-
struing the language of the former deed; and that when read to-
gether, the deeds gave the defendants no right to remove bricks
from the plaintiff's wall and insert timbers therein for the purpose
of supporting their building.

The plaintiff was permitted to show in rebuttal, that his foundation
wall projected four inches beyond the face of the upper brick
divisional wall. Held that this was proper, since it was an act of
A consistent with the language of B's deed to him, and, in connec-
tion therewith, tended to sustain the plaintiff's interpretation of
the language of the other deed.

The trial court is not bound to read aloud a verdict which is not in
proper form, but may return it to the jury after instructing them
how to perfect it.

Argued May 31st—decided August 1st, 1899.

ACTION in the nature of trespass qu. cl. fr. for damages
and for an injunction, brought to the Superior Court in New
London County and tried to the jury before *Thayer, J.;* ver-
dict and judgment for the plaintiff for $1 damages, and ap-
peal by the defendants for alleged errors in the rulings and
charge of the court. *No error.*

The finding shows that the plaintiff and defendants own
adjoining lands, the plaintiff's lying south of the defendants';
that the Clarendon house owned by the plaintiff is a four

story brick building, the face of the north wall of which is the divisional line between his land and that of the defendants, the cornice upon which extends 18 inches north over the defendants' land. There is a building of the same height upon the defendants' land called the Hempstead house.

In erecting an addition upon the south side of their building the defendants, at several points between the basement and cornice of the plaintiff's building, removed a number of bricks from said north wall of plaintiff's building and inserted in the openings thus made the ends of floor and roof timbers to the depth of four inches, for the support of their, the defendants', said addition.

The defendants justified their said acts under a certain deed which they offered in evidence, from one Dr. Hooker to the Hempstead sisters, to the rights and title of the grantees in which the defendant had succeeded, and to the property and rights of the grantor in which the plaintiff had succeeded, and which deed contained the following provision : " Reserving to myself the right to project my cornice over the land thus conveyed eighteen inches, and there to remain unless they, the said grantees, wish to build higher, and I hereby agree that they may use my wall to build against or upon if they wish to build; and in case it becomes necessary for them to do so, to accommodate any building they may erect higher than mine, they may take off my jet and I will provide suitable gutters and conductors to carry off the water from my own roof."

The plaintiff thereupon offered in evidence a deed from said Hempstead sisters to said Hooker, claiming that it appeared to have been executed at the same time with said first named deed, and between the same parties, and that it concerned the same transaction, and that the two instruments should be read together to determine the real intention of the parties.

The following language of said deed was claimed by the plaintiff to be material to the question in issue: "And the said Dr. Hooker is to have the privilege to project his eaves of his house when he builds 18 inches north of said first described line on condition that he carry off the water in a gutter

and not permit it to fall on our remaining land, and we reserve to ourselves the right to build on the foundation wall which said Hooker may build up to set his house upon, and it is agreed and understood that if we choose to build higher than the said Dr. Hooker's building we have the right to take off his jet and build higher as we may see fit, and the said Hooker in that case is to provide a suitable trough and conductor to carry off the water from his roof."

The defendants objected to the admission of said deed in evidence and excepted to the ruling of the court admitting the same.

Against the defendants' objection the plaintiff was permitted to testify, in rebuttal, that the north foundation wall of his building was constructed so that it projected four inches north of the face of said north brick wall. The defendants excepted to said ruling. The defendant William H. Shields afterwards, without objection, testified that said foundation wall did not so project where he examined it.

The defendants claimed that by the said provision in the deed from Dr. Hooker to the Hempstead sisters they, the defendants, as successors in title to said grantees, had the right to insert the timbers of their said addition into the north wall of the plaintiff's building, and in substance requested the court to so instruct the jury.

The court charged the jury, in substance, that the right acquired by the Hempsteads under the deed from Dr. Hooker was to build "against or upon" the said north wall, and that they did not thereby acquire the right to dig into the wall and take out bricks and insert timbers to support their own building, and that such was, in the opinion of the court, a fair construction of the language of the deed in question.

The jury first returned a verdict for the plaintiff to recover "one dollar damages for inserting timbers into the wall, without costs." Without reading this verdict in the hearing of counsel, the court returned it to the jury with instructions to find the issue for the plaintiff or defendants, without reference to costs. The jury afterwards returned a verdict for the plaintiff to recover one dollar damages and costs, and,

under the same circumstances stated with reference to the former verdict, were told by the court that they had nothing to do with the matter of costs and were again returned, when they rendered a verdict for the plaintiff for one dollar damages, which was accepted by the court.

*Donald G. Perkins,* for the appellants (defendants).

*W. A. Briscoe,* for the appellee (plaintiff).

HALL, J. The purpose of this action was to test the alleged right of the defendants to insert into the plaintiff's brick wall, the north face of which marks the divisional line between said parties, timbers for the support of a building erected upon the defendants' land in the city of Norwich. As the facts alleged in the complaint were not disputed, a general denial was improperly pleaded.

By the answer and reply the parties evidently intended to raise the question whether the acts of the defendants were within the rights granted by the deed of Dr. Hooker to the Hempsteads. Defendants' counsel, by their claims to the trial court and their requests to charge, seem to have regarded that question as raised by the pleadings. The court properly treated it as within the issues framed.

Formerly the land of the plaintiff was owned by Dr. Hooker, and that of the defendants on the north by the Hempstead sisters. In 1839 each of said parties quitclaimed to the other triangular strips lying between the old divisional line and a new one created by said deeds, the apparent object of said mutual conveyances being to fix the divisional line between them at a right angle to the street on the west.

The basis of the defendants' claimed right to use, for the support of the timbers of the addition to their building, the north wall of the plaintiff's building erected since the date of said deeds, is a provision in one of said deeds — that of Hooker to the Hempsteads, to the latter of whose rights the defendants have succeeded — in which this language is used: "and I hereby agree that they may use my wall to build against or upon if they wish to build."

These words the defendants contend grant them the right to build upon the wall, and, as incident thereto, the right to remove bricks therefrom in order to insert timbers into, and rest them upon, the wall.

This construction would give to the defendants' north wall the characteristics of a party wall. It would practically become a divisional wall between contiguous buildings, to be used in common by the owners of the adjoining lands for the purpose of supporting the timbers of such buildings, and as an exterior wall of their respective buildings.

At common law a party wall becomes such only by agreement, or by prescription, which supposes an agreement. *Whiting* v. *Gaylord*, 66 Conn. 337, 344. The term is usually applied to a wall resting on both sides of the divisional line between the parties, but a wall built wholly upon the land of one of the two adjoining owners may, by force of the terms of the grant, possess the features of a party wall. Washburn on Easements (3d ed.), 566; 16 Amer. Law Reg. 10. The wall of a building wholly upon the land of one of such owners does not, from the fact that it is built up to the divisional line, become a party wall to the extent that the other may build his timbers into it or rest them upon it. To sustain the defendants' contention it must be held that Dr. Hooker, by the deed laid in evidence, expressly granted to the defendants, as an easement, the right to use this wall as a party wall in the manner claimed, and imposed this servitude upon his land.

That it was the intention of the grantor to create such an easement in favor of the Hempsteads and attach it to the dominant estate and render his own estate forever servient thereto, should be made to appear from the plain and direct language of the grantors. *Goodwin* v. *Hamersley*, 69 Conn. 115, 121. "In case of an express grant, the fact of the creation of the easement, as well as its nature and extent, is to be determined by the language of the deed, taken in connection with the circumstances existing at the time of making it." 2 Washburn on Real Property (4th ed.), 301.

The language referred to as creating the easement in favor of the Hempsteads immediately follows that by which the

grantor reserves the right to project his cornice 18 inches over the defendants' land, where it is to remain unless the grantees wish to build higher, when they may remove it. It is in that connection that the grantor agrees that they may use his wall to build against or upon. It was clearly contemplated that the grantor should erect his building first, and yet we find no provision for a removal by the grantees of any part of the wall or building when completed, excepting the cornice. To say that after the grantor's north wall was completed the grantees might use it to build against or upon, and might remove the cornice, if necessary, was not to plainly say that after the completion of the wall they might make openings in its face and insert the timbers of their building and have them supported by such wall.

It was the duty of the court to construe the language of this provision. 1 Greenl. on Evidence (13th ed.), § 277, note 2; *Auffmordt* v. *Stevens*, 46 Conn. 411. And in so doing it might be read in connection with the language of the other deed from the Hempsteads to Dr. Hooker, as the latter was between the same parties, apparently executed at the same time, and related to the same subject-matter as the deed under consideration. The two deeds are to be treated as parts of one agreement. 1 Greenl. on Evidence, § 283; *Isham* v. *Morgan*, 9 Conn. 374, 378.

In the latter deed the Hempsteads grant to Dr. Hooker the right to extend his eaves 18 inches over the divisional line and reserve to themselves, not the right to use the grantee's wall for the support of the timbers of their building, but " the right to build on the foundation wall " which the grantee may build to set his house upon, and to remove the grantee's cornice in case they should build higher than the grantee's building. Reading these deeds together it seems very clear that no such easement was created as gave the defendants and their successors in title the right, for the purposes of such support, to insert the timbers of their building into the wall of the building erected by Hooker.

The provision relative to building " against or upon " the wall, or upon " the foundation wall " to be built by Dr.

Hooker, may have been inserted in these deeds because the parties thought it necessary or proper to provide that the right granted to and reserved by Dr. Hooker, to extend the eaves of his building beyond the divisional line, should not prevent the owners of the land on the north from building under such projecting eaves against or up to the north face of the wall of the Hooker building.

The plaintiff was entitled to prove that his foundation wall projected beyond the north face of his brick wall. It was proof of an act of Dr. Hooker consistent with the language of the deed of the Hempsteads to him, and, in connection therewith, tended to sustain the plaintiff's interpretation of the words in the other deed: " they may use my wall to build against or upon." The deed from Hooker to the Hempsteads having been offered by the defense, the other deed, and in connection with it evidence of the projection of the foundation wall, was admissible in rebuttal.

There was nothing erroneous in the action of the court with reference to receiving the verdict. The proper form of procedure upon the return of a verdict is discussed in the recent case of *Magoohan* v. *Curran*, 71 Conn. 551.

There is no error.

In this opinion the other judges concurred.