## SUSANNAH WHITNEY *vs.* UNION RAILWAY COMPANY.

A restriction of the manner of using land granted, not against public policy, and beneficial to adjacent land of the grantor, whether inserted by way of condition or covenant, or otherwise, may be enforced in equity against the grantee, or his assigns with notice.

The owner of a tract of land laid it out in lots for dwelling-houses, and conveyed one lot with these restrictions: " That if the grantee, his heirs or assigns, shall use or follow, or suffer any person to use or follow, upon any part thereof, the business of a taverner, or any mechanical or manufacturing, or any nauseous or offensive business whatever, then the grantors, or any person or persons at any time hereafter, who at the time then being shall be a proprietor of any lot of land " within the same tract, " shall have the right, after sixty days' notice thereof, to enter upon the premises, and forcibly, if necessary, to remove therefrom any buildings erected or used contrary to the above restrictions, and to abate all nuisances." *Held,* that these restrictions, after the deed had been recorded, might be enforced in equity against an assignee of the grantee, in favor of the original grantor, still continuing to own one of the other lots, and not having been guilty of laches; but not to the extent of abating erections made by the first grantee, while he held the land, with the grantor's knowledge.

The objection of multifariousness to a bill in equity which sets forth two distinct and independent grounds of complaint is obviated by the removal of one of those grounds by the defendant after the filing of the bill and before answer.

BILL IN EQUITY, filed at April term 1857, alleging that the plaintiff for forty years had been seised in fee of certain lands in Cambridge; that she had incurred great expense in procuring a survey and plans thereof, and constructing and grading streets thereon, intending the same for private residences; that on the 10th of September 1851 she sold and conveyed by warranty deed (duly recorded) to Artemas White a lot of this land, subject to these restrictions : " That if the said Artemas White, his heirs or assigns, shall suffer any building to stand or be erected within ten feet of Lambert Avenue, or shall use or follow, or suffer any person to use or follow, upon any part thereof, the business of a taverner, or any mechanical or manufacturing, or any nauseous or offensive business whatever, then the said grantors, or any person or persons at any time hereafter, who at the time then being shall be a proprietor of any lot of land, represented upon said plan, east of lot No. 27 and north of Lambert Avenue, shall have the right, after sixty days' notice thereof, to enter upon the premises with his, her or their servants, and for-

cibly, if necessary, to remove therefrom any building or build-ings erected or used contrary to the above restrictions, and to abate all nuisances, without being liable to any damages there-for, except such as may be wantonly and unnecessarily done."

The bill further alleged that White erected a stable on this lot, and kept horses for hire and at livery, against the remon-strance of the plaintiff, and to her nuisance and injury; that the defendants had since by mesne conveyances acquired White's title, and enlarged and added to the stable, and were building further additions, and kept and intended to keep a much larger number of horses, contrary to the reservations and restrictions in the deed, and to the injury, nuisance and annoyance of the plain-tiff, and to the injury of a lot with a dwelling-house thereon, still owned and occupied by the plaintiff, on the opposite side of the same street and within the tract mentioned in the restrictions; and that the defendants had laid down rails and were proceed-ing to construct a turntable in Lambert Avenue.

The bill prayed for an injunction to restrain the defendants from erecting additional stables, or laying rails or constructing a a turntable in the street, or keeping a stable for horses upon the premises, and for an abatement of these nuisances.

The defendants in their answer admitted so much of the alle-gations of the bill, as related to the laying down of rails and the construction of a turntable, but alleged that immediately after the filing of the bill they entirely removed and abated the same; and they demurred to the rest of the bill, upon grounds which are sufficiently stated in their argument.

*B. F. Butler & N. St. J. Green,* for the defendants. 1. The restriction in the plaintiff's deed to White cannot be enforced against the defendants. It does not amount to a condition, be-cause it does not defeat the estate; and, as a condition, it would be void, because the right of entry is reserved to strangers. 2 Cruise Dig. tit. 13, *c.* 1, §§ 13, 15. It is neither an exception nor a reservation. Shep. Touchst. (Prest. ed.) 80. *Cutler* v. *Tufts,* 3 Pick. 272. It is not a covenant of the grantee. Platt on Cov. 10, 18. 1 Chit. Pl. (6th Amer. ed.) 131. *Hinsdale* v. *Humphrey,* 15 Conn. 431. *Maule* v. *Weaver,* 7 Barr, 329. At

the most, it is a parol agreement of the grantee that he will not carry on the kinds of business specified.

Being such an agreement, equity cannot enforce it against the defendants, who have taken the land by mesne conveyances. The restriction, being a simple agreement, does not run with the land. There is no privity of contract between the plaintiff and the defendants. There is no allegation in the bill that the defendants took the estate with notice of the restriction.

2. The keeping of a large number of horses is not of itself a nauseous or offensive business, nor alleged in the bill to be so. As carried on by the defendants, it is not a business at all, but only incidental to their business as common carriers of passengers under their charter. *St.* 1855, *c.* 338.

3. This restriction is against the policy of the law and therefore void. It is a total and perpetual prohibition of carrying on any mechanical and manufacturing business upon the granted premises. If the grantor can prohibit all trade, he can also prohibit habitation and agriculture, so that the land shall remain forever unoccupied and barren. *Alger* v. *Thacher*, 19 Pick. 51.

4. If not void, this restriction is so unreasonable and so far against public policy, that it will not be enforced in a court of equity. 1 Story on Eq. § 769.

5. The plaintiff has lost her right to an injunction by acquiescence and laches. The conveyance to White was made in September 1851. The defendants were incorporated in May 1855. The stable complained of was erected by White, who there kept horses at livery; and was purchased by the defendants for purposes incident to their business as carriers, without notice of the plaintiff's claim of right to abate. The defendants do not appear to have had notice till the filing of the bill. *Roper* v. *Williams*, Turn. & Russ. 18.

6. The bill is multifarious. It asks for relief against the maintenance of a stable contrary to a restriction in a deed, to which the plaintiff was a party, of the land upon which it stands; and for the removal of rails laid in a street, as being a nuisance at common law; and does not allege that the plaintiff held the

land and street by the same title. That the land adjoins the street does not obviate the objection. Adams on Eq. 309. *Attorney General* v. *Goldsmiths' Co.* 5 Sim. 670. *Ward* v. *Northumberland*, 2 Anstr. 469. *Salvidge* v. *Hyde*, 5 Madd. 138. *Attorney General* v. *St. John's College*, 7 Sim. 241. *Shackell* v. *Macaulay*, 2 Sim. & Stu. 79. The plaintiff, having by this suit obtained a removal of one cause of complaint, cannot proceed in this suit upon the other distinct cause.

7. The portion of the deed set forth in the bill shows that the plaintiff was not the sole grantor. The other grantors are necessary parties. Unless they are included in the decree, the defendants may be obliged to defend the same matter anew. Story Eq. Pl. § 138.

*E. R. Hoar*, for the plaintiff.

The decision was made in January 1860.

BIGELOW, J. The claim of the plaintiff to equitable relief rests mainly on the validity of the restrictions contained in her deed to Artemas White of September 10th 1851, under which the defendants hold the estate described in the bill. By the facts stated in the bill and admitted by the demurrer, it appears that the plaintiff was originally the owner in fee of a large tract of land, which she caused to be surveyed and laid out in lots, with suitable ways or streets affording convenient access thereto, intending to sell them to be used and occupied by private dwellings. One of these lots she sold and conveyed to White by the deed abovementioned, containing the clause as to the use and occupation of the premises, which is fully stated in the bill. This lot by mesne conveyances has become vested in the defendants. The plaintiff still continues the owner of a part of the tract originally laid out by her, and occupies a dwelling-house thereon, nearly opposite to the lot now owned by the defendants. She was therefore the original grantor by whom the restrictions were created, and, as the owner and occupier of a part of the estate out of which the land owned by the defendants was granted, and for the benefit and advantage of which the restrictions were imposed, she has a present right and interest in their enforcement. The purpose of inserting them in the

deed is manifest. It was to prevent such a use of the premises by the grantee and those claiming under him, as might diminish the value of the residue of the land belonging to the grantor, or impair its eligibility as sites for private residences. That such a purpose is a legitimate one, and may be carried out, consistently with the rules of law, by reasonable and proper covenants, conditions or restrictions, cannot be doubted. Every owner of real property has the right so to deal with it, as to restrain its use by his grantees within such limits as to prevent its appropriation to purposes which will impair the value or diminish the pleasure of the enjoyment of the land which he retains. The only restriction on this right is, that it shall be exercised reasonably, with a due regard to public policy, and without creating any unlawful restraint of trade. Nor can there be any doubt that in whatever form such a restraint is placed on real estate by the terms of a grant, whether it is in the technical form of a condition or covenant, or of a reservation or exception in the deed, or by words which give to the acceptance of the deed by the grantee the force and effect of a parol agreement, it is binding as between the grantor and the immediate grantee, and can be enforced against him by suitable process, both in law and equity.

The more difficult question, and the one on which the decision of this case must turn, is, to what extent and in what cases are such stipulations binding on those who take the estate under the grantee, directly or by a derivative title? Upon this point, the better opinion would seem to be that such agreements are valid, and capable of being enforced in equity against all those who take the estate with notice of them, although they may not be strictly speaking real covenants, so as to run with the land, or of a nature to create a technical qualification of the title conveyed by the deed. This opinion rests on the principle that, as in equity that which is agreed to be done shall be considered as, performed, a purchaser of land, with notice of a right or interest in it, subsisting in another, is liable to the same extent and in the same manner as the person from whom he made the purchase, and is bound to do that which his vendor had agreed to perform. Therefore an agreement or covenant. though merely

personal in its nature, and not purporting to bind assignees, will nevertheless be enforced against them, unless they have a higher and better equity as *bona fide* purchasers without notice. It is on this ground, that a purchaser of an estate, taking it with notice of a prior agreement by the vendor to sell it to another, can be compelled in equity to convey it according to such agreement. In like manner, by taking an estate from a grantor with notice of valid agreements made by him with the former owner of the property, concerning the mode of occupation and use of the estate granted, the purchaser is bound in equity to fulfil such agreements with the original owner, because it would be unconscientious and inequitable for him to set aside and disregard the legal and valid acts and agreements of his vendor in regard to the estate, of which he had notice when he became its purchaser. In this view, the precise form or nature of the covenant or agreement is quite immaterial. It is not essential that it should run with the land. A personal covenant or agreement will be held valid and binding in equity on a purchaser taking the estate with notice. It is not binding on him merely because he stands as an assignee of the party who made the agreement, but because he has taken the estate with notice of a valid agreement concerning it, which he cannot equitably refuse to perform. Sugd. Vend. (11th ed.) 734–743. *Bedford* v. *British Museum*, 2 Myl. & K. 552. *Bristow* v. *Wood*, 1 Collyer, 480. *Whatman* v. *Gibson*, 9 Sim. 196. *Schreiber* v. *Creed*, 10 Sim. 9. *Barrow* v. *Richard*, 8 Paige, 356, 360.

The validity of agreements similar to those in the plaintiff's deed to White has been also recognized and established, and their performance enforced in equity, as against subsequent purchasers with notice, upon the ground that such stipulations create an easement or privilege in the land conveyed, for the use and benefit of the grantor, and those who might afterwards claim under him as owners of adjacent land, of which the land granted originally formed a part. In such cases, although the covenant or agreement in the deed, regarded as a contract merely, is binding only on the original parties, yet, in order to carry out the plain intent of the parties, it will be construed as creating a

right or interest, in the nature of an incorporeal hereditament or easement, appurtenant to the remaining land belonging to the grantor at the time of the grant, and arising out of and attached to the land, part of the original parcel, conveyed to the grantee. When therefore it appears by a fair interpretation of the words of a grant that it was the intent of the parties to create or reserve a right, in the nature of a servitude or easement, in the property granted, for the benefit of other land owned by the grantor, and originally forming with the land conveyed one parcel, such right will be deemed appurtenant to the land of the grantor and binding on that conveyed to the grantee, and the right and burden thus created will respectively pass to and be binding on all subsequent grantees of the respective lots of land. Cases have arisen where the owner of a large tract of land, for the purpose of providing an area in front of it, to be kept forever open, or securing its permanent use and enjoyment for dwellings and excluding all offensive and noxious trades from the premises, has inserted covenants or conditions in his grants, restricting the use of the land conveyed so as to effect these objects. It has been held in such cases, on the grounds just stated, that each grantee of a part of the land subject to such restrictions is bound to observe the stipulations in favor of other grantees of a part of the same land, and is entitled to claim a like observance in his own favor as against them. Nor does it make any difference that a party cannot maintain a suit at law in his own name to enforce the stipulation as a covenant or contract. A court of equity will give full effect to the stipulation, on the complaint of a party for whose benefit and protection, as owner of the land, the stipulation was intended. *Hills* v. *Miller*, 3 Paige, 256. *Watertown* v. *Cowen*, 4 Paige, 510. *Barrow* v. *Richard*, 8 Paige, 360.

This class of cases is clearly distinguishable from *Keppel* v. *Bailey*, 2 Myl. & K. 517. There was in that case no covenant or agreement between grantor and grantee concerning the particular mode of using the estate granted, as a privilege or benefit to other land belonging to the grantor. The sole question was, whether assignees of a lease were bound to perform certain

covenants made by their assignors with owners of property held by a distinct and independent title as to the use of such property by the assignors for certain purposes. The covenant was originally between strangers having no privity of estate with each other, and there was nothing on which to found any right or privilege in the nature of a grant or reservation of an easement. The decision, however, in *Keppel* v. *Bailey*, has been severely criticized in Sugden on Vendors, 737–741, and the soundness of several of the dicta of the lord chancellor, and of the decision of the case, called in question by the learned author of that valuable treatise.

In the light of these principles and authorities, it is not material to the decision of this case to determine the precise nature of the clause in the deed to White, by which restrictions were imposed on the use and enjoyment of the estate now owned by the defendants. It is sufficient that the intention of the parties to the original deed to place restrictions on the use and enjoyment of the estate granted is clear. The grantee, by accepting the deed and taking title under it, was bound to comply with its stipulations, so far as from their nature they were to be performed by the owner of the land, or created a right or privilege therein in the nature of an easement in favor of his grantor and those claiming under him. This deed was duly registered, and the defendants, claiming title derivatively under the grant, have constructive notice of its stipulations, and are bound in equity to observe them.

The objection that the terms of the restrictions are contrary to public policy and in unreasonable restraint of trade is not well founded. They do not restrict the alienation of land. The owner of the fee can convey it at his pleasure. They do not tend to perpetuity. The person who is entitled to the rights or privileges created or secured by the restrictions can at any time release them. They do not impair the enjoyment of the property. This remains in the respective parties according to their legal rights under the contract and grant; in the same manner as in case of a right of way, where one person owns the land, which he may use and occupy, subject only to the enjoyment of the

easement by him who has the right of way over it. Nor do such restrictions operate to impose any unlawful restraint of trade. While they are confined to separate parcels of land of limited extent, they are at most only in partial restraint of trade, and do not transcend the legitimate exercise of the right which every owner has to control and dispose of his own estate.

Upon the grounds therefore that the plaintiff is the grantor in the original deed by which the land now owned by the defend- ants was conveyed, and is the owner and occupier of a part of the original tract for the benefit of which the restrictions in the deed to White were inserted ; that these restrictions were useful and beneficial to the enjoyment of the land of the plaintiff, and are in the nature of an easement or privilege in the land granted, reserved to the grantor, and are not unreasonable or against public policy ; and that the defendants took their estate with notice of these restrictions, and are equitably bound to regard them in the use and enjoyment of their property ; we are of opinion that the plaintiff can maintain this bill to enforce their observance, if she has not waived or relinquished the right by her own laches.

But it is very clear that a suit in equity to compel a compli- ance with such stipulations concerning the use of property must be seasonably commenced, before the persons in possession of the estate have expended money or incurred liabilities in erecting buildings or other structures on the premises. It would be con- trary to equity and good conscience to suffer a party to lie by and see acts done involving risk and expense by others, and then permit him to enforce his rights and thereby inflict loss and damage on parties acting in good faith. In such cases, a prompt assertion of right is essential to a just claim for relief in equity. In the present case, the plaintiff can have no equita- ble relief to prevent the use or procure the abatement of the stable erected by White. Having stood by and permitted its erection, she cannot now invoke the aid of the court to enforce a remedy in equity for its removal. Whether she has been guilty of further laches, so as to prevent her maintaining the bill against the defendants for acts done by them in enlarging the

stable, can be determined only upon hearing the facts bearing on the question.

Nor can we decide in the present posture of the case whether the erection of a stable is a " nauseous or offensive business," in the proper sense of those words as used in the deed to White. This is mainly a question of fact, to be determined on a view of the evidence relevant to the inquiry, and depending in some measure on the extent and mode of use of the premises by the defendants for the purposes of a stable.

The objection that the bill is multifarious, if originally tenable, is now obviated by the defendants' answer that they have removed the railroad track and turntable from the street or avenue, and entirely abated the same. This allegation may therefore be now deemed as stricken from the bill.

It does not appear by the allegations in the bill, that any person other than the plaintiff has any right or interest in the enforcement of the agreements contained in the deed to White. Nor does it appear, except by an uncertain and remote inference, that there was any other grantor in that deed but the plaintiff.                    *Demurrer overruled.*