## RESTRICTIONS IN DEED AS TO CHARACTER OF IMPROVEMENTS.

[Common Pleas Court of Hamilton County.]

STEPHEN H. BURTON ET AL V. MABEL A. STAPELY.*

Decided, May 3, 1904.

*Deed—Use of Property Restricted to Residence Purposes—Valid, though not in Deeds of Neighboring Lot Owners—Apartment House a Violation of Restriction—Uniformity of Frontage, what Constitutes—Injunction Against Threatened Violation of Restrictions.*

1. Where there are restrictions in a deed conveying the fee which forbid the grantee from erecting any building except of a certain kind upon the ground, the grantor may bring an action for a violation of the covenants by the grantee even although the lot is in a subdivision where there is no "plan" (as to kind and cost of houses, etc.), and although there are no restrictions upon any of the other lot owners in the subdivision, and, further, that the grantor owned no lot in the subdivision except this one sold to the defendant.

2. Building an apartment house is a violation of a restriction which requires the grantee to use the lot "for residence purposes only."

3. A restriction in a deed that the front of said dwelling house or any part thereof shall not be nearer to the street than the house next east, means that the front walls of both houses must be in line with each other; and to build a house so that its front wall is in a line with the front of the porch of the adjacent house is a violation of the restriction in the deed.

4. When there are restrictions put upon the grantee in a deed as to the use of the ground, a court of equity will, in behalf of the grantor, restrain any violation of the restrictions which are threatened by the grantee.

LITTLEFORD, J.

The plaintiffs in this case ask for an injunction against the defendant to restrain her from building an apartment house

---

*Affirmed by the Supreme Court, March 27, 1906 (74 Ohio State), when the contrary judgment of the circuit court was "reversed and judgment given for plaintiff in error on the facts found by the circuit court." For the facts as found by the circuit court, see end of this opinion.

on the lot which they have recently sold to her, on the ground that she is violating a restriction on the use of the property, contained in the deed to her. The facts in the case are not in dispute. Plaintiffs were the owners of a lot of ground situated on the south side, of Clinton Springs avenue, in Cincinnati, directly oppositte the point where Mitchell avenue runs diagonally into Clinton Springs avenue.

This lot is Lot 1 of A. O. Tyler's subdivision in Cincinnati, Ohio. It was the only lot owned by these plaintiffs in that subdivision, on the south side of Clinton Springs avenue, but they have an interest in tracts of land on Mitchell avenue, not far from the lot in question. There is no "plan" governing the lots in that part of Tyler's subdivision—that is, the owners of the lots in that subdivision can build to the street line if they see fit.

In August, 1903, the plaintiffs in this case sold the lot in question to the defendant, and in the deed to her inserted the following clause:

"Subject, however, to the conditions and restrictions hereinafter contained which are to run with the land herein conveyed and to be observed and performed by, and to be binding upon said grantee, her heirs, representatives and assigns, with the right in the grantors herein, their successors and assigns, or any present or future owner or owners of any lot or lots in said subdivision, their heirs, representatives or assigns, to enforce any or all of said conditions or restrictions; together with all the privileges and appurtenances to the same belonging, and all the rents, issues and profits thereof; to have and to hold the same to the only proper use of the said Mabel A. Stapley, her heirs and assigns forever, subject to the following restrictions and conditions, to-wit: That said grantee, her heirs or assigns, shall use said premises hereby conveyed, for residence purposes only, including necessary outbuildings thereon, and a stable. That no dwelling house shall be erected or re-erected or maintained on said premises to cost less than four thousand dollars, and that the front of said dwelling house or any part thereof, or any structure thereon, shall not be nearer than the house next east of said property from the front line of said premises; and said premises or any dwelling house which may be erected thereon, shall not be used for any mercantile, manufacturing or business purposes; or for a public or private hos-

pital, or for infirmary purposes; and no fermented, distilled or other liquors shall be sold on said premises hereby conveyed. All building materials of all kinds used in building upon or the improving of said lot, shall be deposited on the lot herein conveyed. The walk and curb shall be protected from any and all damages. All the restrictions and conditions herein are binding upon the said Mabel A. Stapely, her heirs and assigns, until the year A. D. 1917; and this conveyance is accepted by said grantee for Mabel A. Stapely and for her heirs and assigns subject to the foregoing restrictions.''

The petition in the case alleges that the defendant, disregarding the covenants in her deed, threatens to build, and is now building a large flat building on said lot; and, furthermore, that she is about to locate her said flat building so that its front wall will be nearer to the front of her lot than the front wall of the dwelling house next east of her property is to the front of its lot. Said dwelling house is alleged to be 65 feet distant from the front line of the lot on which it stands. The testimony of the defendant's own witnesses is to the effect that she is about to erect on her lot a very large apartment house, intended to accommodate from fifteen to twenty families, and to cost $100,000. The building is to be three stories high, in length 170 feet 6 inches, and in depth 53 feet 3 inches. Furthermore, it is to have no front porches, and the edge of the building itself is to be 55 feet from the front of the lot, while the stone steps in front of it will be 51 feet from the front of the lot. It is admitted that the building will be considerably closer to the street than the front wall of the dwelling house next east, but the testimony shows that the front wall of the apartment house will be on a line with the front porch of the said dwelling house next east.

The questions presented in the case are four in number.

Have the plaintiffs a right of action against the defendants under the circumstances, even conceding that she is about to violate the restrictions of the deed?

Will she violate the restrictions of the deed by erecting an apartment house?

Will she violate the restrictions in the deed by building as close to the front line of her lot as she admits she is about to build?

Ought a court of equity to enjoin the defendant, even if the three preceding questions be answered in the affirmative?

It seems to the court that these facts present a case quite different from the very common case where a tract of land is sold off in lots to different persons, and covenants exacted from the several purchasers imposing restrictions upon the use of the lots sold in pursuance of a general plan · for the mutual advantage of all the owners.

Many cases· of the latter sort have been cited by the learned counsel for the defendant, and at least one (*Burton* v. *Cooper*, 8 N. P., 406) by the learned counsel for the plaintiffs; but the principles enunciated in those decisions do not assist in the determination of this case as the court sees it.

Counsel for plaintiffs have, however, cited numerous other cases in support of the principle which the court has adopted as determining this case.

Cases like many of those cited, of a violation of restrictions in subdivisions which have a "plan"—that is, whose houses must be of a certain value, and be situated a certain distance from the street—have given rise to numerous long and learned opinions on whether or not the restrictions in the deeds are covenants running with the land, or create easements—whether or not such restrictions can be enforced by a vendor against the vendee after the vendor himself has broken the "plan" by making a deed to some one without any restrictive clauses, or by allowing some prior vendee to disregard the "plan"; whether or not prior vendees can enforce an observance of the restrictions on the part of subsequent vendees, and whether or not a court of equity ought to interfere, etc., with many other like difficult questions.

It is the opinion of the court that this case should not be complicated with a discussion of any such propositions, and that all cases dealing with subdivisions with a "plan" ought to be put aside in determining the case in hand.    There can be no doubt that where a part only of a tract is sold, either the part sold or the part retained may be made subject to a restriction in favor of the other part, or the two parts may be made mutually servient and dominant; or, where the whole tract is

sold in lots, a restriction may be imposed on each lot in favor of all the others; but, admitting all these propositions to be true, they can not be applied to a solution of the case before us.

The question here is: Can a man who owns but one lot in a subdivision where there is no "plan," put a restrictive clause in an otherwise absolute deed, and then ask a court of equity to enjoin a violation of the restrictions; or, does it make a case for injunction if, in addition, he has an interest in property that is in the vicinity of the lot sold?

That a deed in fee simple may impose some certain restraints upon a vendee is a very old and well established principle. A deed may contain a condition against the sale of intoxicating liquors (Devlin on Deeds, Section 963). A condition may be imposed in a deed on the power of alienation in certain cases, as that the land shall not be conveyed before a certain date or to a certain person (47 N. H., 396). A clause in a deed, "Provided, however, and this conveyance is upon condition, that no window shall be placed in the north wall of the house aforesaid, or of any house to be erected upon the premises within thirty years from the date hereof," is a valid condition (*Gray* v. *Blanchard,* 8 Pick., 283). See also *Langley* v. *Chapin,* 134 Mass., 82; *Hayden* v. *Stoughton,* 5 Pick., 528. A great number of other cases might be cited to substantiate this proposition, but it is sufficient that it has been determined by our Supreme Court.

In *The Village of Ashland* v. *Greiner et al,* 58 O. S., 67, where a grant of land was made to be used for religious purposes only, and long afterwards the owners of the land conveyed a strip of it to the village of Ashland for a street, the learned court, in its decision, Burket, J., rendering the opinion, uses the following language:

"When value is paid for an estate, such stipulation (a stipulation that the estate is to be used only for particular purposes) is construed to be a covenant running with the land, in the nature of a trust, for the uses and purposes expressed in the deed of conveyance, and in case of a breach of the trust, a court of equity will, in a proper action, decree the purpose of the trust by confining the uses of the estate to the uses and

purposes expressed in the deed. In such case a restricted use of the estate becomes a part of the consideration, and is consented to by the grantee, and it is no hardship on him and his assigns to be compelled to observe the covenants contained in the deed.''

Again, in *Stines* v. *Dorman,* 25 O. S., 580, where a stipulation in the deed was that the grantee, his heirs and assigns, should not allow the premises conveyed to be used as a hotel for a certain period, White, J., states this same principle in the following words:

''The law does not prohibit a grantor from imposing limitations or restrictions on an estate, nor does it require the grantee to take a greater interest than he purchases. If the effect of the stipulation is not to accomplish an illegal purpose, it is lawful; and where it affects the land or the mode of its enjoyment, its effect is put upon all deriving title under the conveyance in which the restriction is found.''

The above decisions are sufficient authority to hold that the plaintiffs had the right to insert the restriction in the deed to the defendant, and are entitled to redress if it is broken by the defendant; but it seems to the court that the plaintiff's case is made even stronger by the fact that they have an interest in valuable tracts in the vicinity of the lots sold to the defendant, although not immediately adjacent to it nor in the same subdivision.

In the case of *Reilly* v. *Otto,* 108 Michigan, 330, the plaintiffs had sold to the defendants a lot with the express restriction: ''There shall not be placed or erected at any time on said premises any store, but only dwelling houses, etc., and that no store or saloon shall be erected or placed on said premises,'' etc. The defendant opened up a saloon, and the plaintiff sought to enjoin him. The plaintiff had sold other lots in the vicinity without any restrictions, and had leased one piece of property in the vicinity for saloon purposes. Plaintiff himself lived a mile and a half away, and owned no ground immediately adjoining the lot in question, although he did own some in the vicinity. The court held that the plaintiff was entitled to an injunction, because a property owner has the right, when he sells his land,

to restrain its use by his grantees within such limits as are reasonable, with a due regard to public policy.

Other cases where a grantor, owning land not immediately adjacent to the lot in question, but in its vicinity, was held to have a right to enforce restrictions upon the use to which the one lot was to be put by his grantee, in whose deed proper restrictions had been incorporated, are *Smith* v. *Barre*, 56 Michigan, 314; *Winnepesaukee Camp Meeting Association* v. *Gordon*, 63 N. H., 505; *Warren* v. *City*, 22 Ia., 351, and *Whitney* v. *Union Railway*, 77 Mass., 359.

In conclusion upon this branch of the case, the court is of the opinion that the restrictions contained in the deed in this case are valid and binding ones as between grantor and grantee, and that the complainants have a right to maintain an action because of the violation of the covenants by the respondent.

Coming now to the second question in this case, is the erection of an *apartment house* a violation of that clause in the deed to the respondent which requires her to use the premises "for residence purposes only"?

In *Rose* v. *King*, 49 O. S., 213-227, the Supreme Court of Ohio gave the following definition of a tenement house:

"A building the different rooms or parts of which are let for residence purposes by the possessor to others, as distinct tenants, so that each tenant, as to the room or rooms occupied by himself, would sustain to the common landlord the same relation that a tenant occupying a whole house would do to his landlord."

This definition was adopted in *Park Co.* v. *Van Duzen*, 63 O. S., 183-200, with the comment that the use of a *dwelling* as either a lodging house or a tenement house is not a use for the purposes of a *private dwelling* or *residence only*.

The words "private dwelling" and "residence" are used as synonyms there, because there is no rule of grammar by which an adjective placed before the first two nouns united by a conjunction modifies both nouns. It modifies the one only before which it is placed.

It seems to the court that these last words from the 63 O. S. ought to settle the question here.

Suppose that a dwelling had been built on this lot and it was about to be used for a tenement house, as defined by our Supreme Court. The language of the 63 O. S., just quoted, is clear that this would not be a use of the dwelling for the purposes of *residence only.*

Now, there is no difference between a tenement house and an apartment building, except that one is for poor people and the other is for well-to-do people. The definition of a tenement house by the Supreme Court applies with exactness to an apartment house.

Hence if the erection of a tenement house on this lot would violate this provision of the deed, so also would an apartment house violate it.

The third question in this case is: Will the defendant violate her covenant if she erects a building so that its front wall will be on a line with the front of the porch of the dwelling house on the lot next east of her premises?

In the case of *Graham* v. *Hite,* 93 Kentucky, 474, the covenant reads:

"It is further agreed that the building or buildings that shall be erected on said lot shall set the same distance back from Front street as the house now erected on the southwest corner of said Front and Oak streets."

A building was begun with its front wall on a line with the front wall of the house referred to, but it had a porch projecting, and it was held that the front wall of the house must be on a line with the front wall of the next house, and that the front of the porch was not the front of the house.

In *Maguire* v. *Caskey,* 62 O. S., 419, it is held that building a porch inside the limit is not violating the restrictions in the deed, and, although there is a case in 168 Penn. State, 178, holding the contrary, still this court is of the opinion that the preponderance of the authority, as well as the reason of the thing, is in favor of holding that the defendant ought not to build the front wall of any structure upon her premises nearer to the street than is the front wall of the next house east.

The fourth and last question in this case is whether or not an injunction suit is the proper action to be brought by these plaintiffs.

No case cited by the defendant's counsel is to the effect that a court of equity will refuse to enjoin the threatened violation of a restriction in a deed. There probably is no authority to that effect. The most that the cases cited by the learned counsel hold is that it is *discretionary* with the chancellor to enjoin or not. Whatever may be the rights, however, of the plaintiff in the various cases, which, as pointed out at the beginning of this question, may arise where there is a subdivision with a "plan," it seems to this court that between the grantor and grantee in a deed there can be no question but that a court of equity ought to enjoin the threatened infraction by the grantee of a covenant in his deed. *Lloyds* v. *London, etc.,* 2 DeG. J. & S., 568.

The right of the plaintiff to an injunction is in fact determined by our Supreme Court in the case of *Ashland* v. *Greiner,* 58 O. S., 67-75, *supra,* so that the question is not a new one in this state. The holding in the Ohio cases is to the effect that the original grantor and his heirs have the right to apply in such cases to a court of equity.

The decree of the court is that the defendant is enjoined from erecting any sort of building except a dwelling house upon the lot in question, and from constructing the front wall of the residence which she may erect on said lot any closer to the front line of her lot than is the front wall of the dwelling house on the lot next east of her premises.

———

The holding of the circuit court, which was reversed, was that the reservation in the deed limiting the use of the property to residence purposes had as its chief purpose the exclusion therefrom of all business of every kind, and inasmuch as the only business which could be connected with an apartment building would be the renting of the apartments, and the testimony did not disclose that the renting would be done on the premises, the erection of such a building would not be in violation of the restriction in the deed as to the use of the land for residence purposes only.

The restriction as to uniformity of frontage the circuit court held would be violated by placing the front of the apart-

ment building on a line with the veranda of the house adjoin-
ing; but as the plaintiffs were not the owners of any lot on
that side of the avenue, and their lots on the opposite side
would not be affected by any violation of the restriction as to
the front line of the proposed building, they would not suffer
any damage thereby, pecuniary or otherwise.

The finding of facts made by the circuit court were as fol-
lows:

1.    Many years before this controversy arose, A. O. Tyler
made a subdivision of land now within that part of Cincinnati
called Avondale. Through this tract west from Reading road
now runs Mitchell avenue. In front of the lots of defendant in
question and hereinafter described, Mitchell avenue divides.
The continuation west is called Clinton Springs avenue, while
the branch that turns northwest is called Mitchell avenue. It
is in a part of the A. O. Tyler subdivision, not yet again sub-
divided, on the south side of Clinton Springs avenue, that the
lots in question lie; and it is over the covenants, restrictions
and conditions in the deed to these lots that the controversy
arises. The plaintiffs and their wives are the grantors in said
deed and the grantee in the same is the defendant.

2.    A large tract of land comprising that part of the A. O.
Tyler subdivision lying north and east of Mitchell avenue and
also some other land beyond, in the Bleachley farm, was, in
1893, laid out as the Rose Hill Park subdivision by Robert
Mitchell, the then owner. By agreement and advertisement
all land in this division was to be sold under a uniform form of
deed containing certain restrictions called the Rose Hill deed.
All land in that subdivision has in fact been so sold with one or
two exceptions, and the different lot owners now number about
sixty.

The Rose Hill Park subdivision is known and designated
among property owners and real estate dealers as a first-class
subdivision, available for and occupied by private residences
only, and within the past five or six years over thirty private
residences have been erected thereon costing from $6,000 to
$40,000 each; most of the lots have a frontage of about 100
feet and are laid out on winding avenues. There is but one

single dwelling house on each lot, with the exception of one double private residence which was erected prior to the laying out of the Park subdivision in 1893. And there is no business of any kind carried on in any part of the Rose Hill Park subdivision nor of the larger A. O. Tyler subdivision.

3. Plaintiffs still own a large undivided interest in the unsold portions of the Rose Hill Park subdivision, such interest amounting in severalty to about twenty lots. Plaintiffs still own an undivided one-fifth interest in a large tract of about seventy acres on both sides of Mitchell avenue and north of Clinton Springs avenue,' most of which was a part of the A. O. Tyler subdivision. To the south of Mitchell avenue before the conveyance next mentioned, plaintiffs and other of the Mitchell heirs owned all the land fronting on said two avenues, same being likewise part of the A. O. Tyler subdivision. This land came to these holders respectively from Robert. Mitchell, or his trustees, without any restrictive convenants or conditions.

4. Prior to the sixth day of August, 1903, plaintiffs, in addition to their lands north of Mitchell and Clinton Springs avenues, owned the two lots next mentioned on the south side of Clinton Springs avenue, being the only lots on the south side of said avenue so owned by them.

That on or about said date said plaintiffs and their wives, i. e., Stephen H. Burton and Ellen Webb Burton, his wife, and Robert M. Burton and Mary Tyler Burton, his wife, in consideration of the sum of forty-five hundred and fifty ($4,550) dollars to them paid by Mabel A. Stapely, sold and conveyed to said Mabel A. Stapely, the defendant herein, the following two lots, described as follows:

That certain lots of land situated in Mill Creek township (now city of Cincinnati), Hamilton county, Ohio, being 65 feet wide on the south side of Clinton Springs avenue, commencing at a point on the said south line 260 feet east of James McKee-han's east line; thence eastwardly on said south line 65 feet to a point; thence southwardly between said two points and between parallel lines and lines also parallel to said McKeehan's east line the full depth of lot No. 1 of A. O. Tyler's Avondale Park, Plat Book No. 2, page 194. Being a part of the property

conveyed to the grantors herein by Albert H. Mitchell et al, by deed dated February 9, 1900, recorded in Deed Book 837, page 625, Hamilton county, Ohio, records.

Also, all that certain lot of land in Section 9, Town 3, Fractional Range 2, Miami Purchase, city of Cincinnati, Hamilton county, Ohio, beginning at a point on the south side of Clinton Springs avenue 647.12 feet west of Reading road, said point being 65.06 feet west of a stone, set for the northwest corner of a tract in said section owned by Lillie I. Ellis; thence with the south line of said Clinton Springs avenue, north 59 degrees 28 minutes west 65 feet; thence south 30 degrees 47 minutes west 190.78 feet more or less; thence south 58 degrees 39 minutes east 65 feet; thence north 30 degrees 47 minutes east 191.70 feet more or less to the place of beginning, being the same property conveyed to the grantors by deed from Albert H. Mitchell and wife, dated December 13, 1901, recorded in Deed Book 868, page 297, Hamilton county records of deeds.

Which said two lots are contiguous to each other.

Said grantors, the plaintiffs, in the deed conveying the above mentioned premises, granted and conveyed to defendant all their estate in the same, but they stipulated as follows: Subject, however, to the conditions and restrictions hereinafter contained which are to run with the land herein conveyed and to be observed and performed by, and to be binding upon the said grantee, her heirs, representatives and assigns, with the right in the grantors herein, their successors and assigns, or their present or future owner or owners of any lot or lots in said subdivisions, their heirs, representatives or assigns to enforce any or all of said conditions or restrictions. To have and to hold the same to the only proper use of the said Mabel A. Stapely, and her heirs and assigns forever, subject to the following restrictions and conditions, to-wit: That said grantee, her heirs and assigns, shall use said premises hereby conveyed for residence purposes only, including necessary outbuildings thereon, and a stable; that no dwelling house shall be erected or re-erected or maintained on said premises to cost less than $4,000, and that the front of said dwelling house or any part thereof or any structure thereon, shall not be any nearer than

the house next east of said property from the front line of said premises, and said premises or any dwelling house which may be erected thereon shall not be used for any mercantile, manufacturing or business purposes, or for a public or private hospital or for infirmary purposes, and no fermented, distilled or other liquors shall be sold on said premises hereby conveyed.

All materials of all kinds used in building upon or improvement of said lot shall be deposited on the lot herein conveyed.

This deed was duly executed and acknowledged by the said grantors and on or about the fourteenth day of August, 1903, was duly recorded in Deed Book 891, page 488. And said grantee took possession of said property pursuant to said conveyance. The deed was made out on a Rose Hill form of deed and the foregoing are the same covenants, conditions and restrictions as are in such form, except as to shrubbery on the sidewalk. Defendant herein also bought a lot next adjoining the lots just mentioned on the west from Richard H. Mitchell, by deed dated December 30; 1903, recorded in Deed Book 898, page 594, records of deeds of Hamilton county, Ohio; this deed contains the following clause:

The grantee and her assigns covenant with the said Richard H. Mitchell, his heirs and assigns, that they will not place any improvements on said lot nearer the line of Clinton Springs avenue than are the buildings now erected on Clinton Springs avenue to the east of said lot.

5. On or about the eleventh day of March, 1904, defendant, by her contractors, started to build a $100,000 apartment house or flat building on the aforesaid three lots, occupying nearly the whole frontage of said lots, the same to stand with its whole front wall not on a line with the front wall of the house next east but with the front of the porch of the house next east. And from this advanced portion of the flat building four steps or more are to descend forward or nearer the street; so far all the houses, six or seven in number, on the south side of Mitchell avenue, have the front wall at a uniform distance from the street and on a line with the wall of the house next east of defendant's lots.

6. The proposed flat building is to contain about one hundred rooms arranged in sixteen five-room suites and four bachelor suites; each suite has its own kitchen, bath room and hall. The building is to be high-class in architecture and finish. The structure will be three full stories high, with a large attic. It will contain its own heating, power and lighting plant. The middle third of the front of the building will be back some twenty-six feet from the front line of the two wings. Its construction upon a line with the building adjoining on the east would not depreciate the value of the adjacent or surrounding property. The major part of the excavation for the cellar of the proposed flat building has been done. The total number of hours of all employes put in on this work before April 8, 1904, amounted to thirteen hundred and eighty (1380), and the total number of hours of all employes put in on this work after April 8, 1904, was two thousand and ninety-one (2091) hours. The work ceased on the day of the decision awarding the injunction.

7. On Monday, April 15, 1904, the petition was drafted and defendant notified that a restraining order would be applied for the next day, but at defendant's request the application was postponed until April 7, when the petition was filed and the hearing had. On April 29, the decision below in the common pleas court was announced awarding the injunction and the final decree was entered on the third day of May. On the fifth day of May the cause was again argued in the circuit court and on the twenty-eighth of May that court announced its opinion.

*John S. Conner, Louis J. Dolle* and *Constant Southworth,* for plaintiffs.

*Shay & Cogan,* for defendant.