HELEN L. BAKER ET AL. *vs.* MICHAEL LUNDE ET AL.

Third Judicial District, New Haven, June Term, 1921.

WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

Where one deeds land adapted and intended by the parties for division into lots for a residential district, and imposes restrictions upon the use of such land, with the intent that they are imposed for the purpose of improving or rendering more beneficial and advantageous the occupation of the estate granted, when it should be so divided, and where also the manifest object of such restrictions was to benefit another tract of the grantor adjoining the land granted, the restrictions constitute perpetual restrictions in the nature of an easement attached to each lot carved out of the land conveyed or out of the adjoining tract retained by the grantor.

A right to enforce a restriction of this kind will not be inferred to be personal where it can fairly be construed to be appurtenant to land.

The owners of a vacant parcel of land comprising one entire city block with the exception of one lot, who had purchased the land to resell at a profit for use as building lots, conveyed a portion of it by a deed which stated that the premises were conveyed subject to restrictions against the erection of other buildings than private dwelling-houses with private garages appurtenant thereto, each house not to be occupied by more than one family, and the grantees gave back a purchase money mortgage which did not mention the restrictions. Later the owners sold their remaining land subject to similar restrictions. Thereafter, by quitclaim deeds without mention of the restrictions, they released their mortgage on all the lots included in it except one, title to which they recovered by foreclosure and then conveyed by warranty deed without restriction to the defendants who had no actual notice of any restrictions. All houses now located upon the entire parcel of land are single family dwelling-houses. In a suit by the owners of lots included in the first deed from the original owners, and owners of the lots included in their second deed, all of whom purchased in reliance upon the restrictions, asking that the defendants be enjoined from erecting a so-called duplex house—a single building divided in the middle by a party wall into abodes for two families—it was *held:*—

1. That the subordinate facts supported the finding of the court that the restrictions were intended for the benefit of all owners of lots carved out of the entire parcel in question.

2. That these restrictions gave each of such owners an equitable right

in the nature of an easement, which was unaffected by the grantor's acquiring of title to a lot by foreclosure and attempted transfer thereof without restrictions, and of which the defendants were charged with notice from the land records.

3. That these restrictions barred the erection of the building contemplated by the defendants, and as there was nothing which entitled the defendants to be freed from the effects thereof, an injunction was properly issued against them.

While the extent of a restrictive easement must be gathered from the language of the deed creating it, yet that language must be read and construed in the light of the circumstances attending and surrounding the transaction.

The case of *Goodwin* v. *Hamersley*, 69 Conn. 115, explained.

Argued June 10th—decided July 22d, 1921.

ACTION to restrain the defendants from building a dwelling-house, designed to be occupied by two families, upon a lot in the city of New Haven, in alleged violation of a right in the nature of an easement claimed by the plaintiffs as owners of neighboring lots, brought to the Superior Court in New Haven County where a motion to dissolve the temporary injunction was denied (*Greene, J.*) and the cause was afterward tried to the court, *Kellogg, J.;* facts found and judgment rendered for the plaintiffs for a permanent injunction, and appeal by the defendants. *No error.*

On August 16th, 1915, Israel Gordon *et al.* purchased a vacant parcel of land in New Haven consisting of the square (excepting a lot owned by one White) bounded northerly by Westwood Road, easterly by West Rock Avenue, southerly by Chapel Street, and westerly by Central Avenue. The White lot had a frontage of fifty feet on West Rock Avenue, and a depth of one hundred and eighty-two feet, and was held free from restrictions. The square was approximately three hundred feet by two hundred and ninety feet in extent.

Subsequent to the conveyance of their interest in the square by the two deeds, Exhibits B and A, on October 8th, 1915, and March 9th, 1916, respectively, the

grantees in said deeds divided the land into thirteen lots, lots one to six, inclusive, fronting on Central Avenue, lot seven on Westwood Road, lot eight on Chapel Street, and lots nine to thirteen, inclusive, on West Rock Avenue.

On October 15th, 1915, Gordon *et al.* conveyed the land later included in lots nine to thirteen, inclusive, to John Igo *et al.*, and this deed, Exhibit B, contained the following provision: "Said premises are conveyed subject to the following restrictions, viz: that there shall not be erected on said land any building other than a private dwelling house and a private garage appurtenant thereto; that such dwelling house shall not be occupied by more than one family or used for any other purpose than a private dwelling house, the first cost of which dwelling house shall not be less than forty-five hundred ($4,500) dollars, and that no board fences are ever to be built on any of the land herein described and conveyed."

On March 9th, 1916, Gordon *et al.* conveyed to Morris J. Deutsch *et al.* their remaining interest in said square, consisting of the land later included in lots one to eight, inclusive. This deed, Exhibit A, contained the following provision: "Said premises are conveyed subject to the following restrictions, viz.: that there shall never be erected on said land any building other than private dwelling houses and private garages appurtenant thereto on each lot, which house is to cost not less than forty-five hundred ($4,500) dollars, that such dwelling house shall not be occupied by more than one family, and that no board fences are ever to be erected on any of the land herein described and conveyed."

Gordon *et al.* purchased this vacant land in the square to resell at a profit for use as building lots, and did so sell it. The restrictions in Exhibits A and B were inserted and intended by the parties for the com-

mon and mutual benefit of all owners of lots carved out of the respective pieces sold, and of all who should become lot owners.

The defendants' land is the lot number thirteen, as above designated. There is no restriction on the owners of any of such lots preventing a further subdivision of the lots. Igo *et al.* gave a purchase-money mortgage to Gordon *et al.* on October 8th, 1915. The mortgage did not mention the restrictions. Gordon *et al.* later released lots nine, ten, eleven and twelve from this mortgage lien.

The plaintiffs Baker, Ward and York own, respectively, lots eight, five, and four, as above designated, and the plaintiffs Moffatt and Wheeler own, respectively, lots ten and eleven.

After October 8th, 1915, Igo *et al.* mortgaged lots eleven, ten, twelve and nine, respectively, to other parties, subject to the restrictions in Exhibit B, and later Gordon *et al.* released their purchase-money mortgage on such lots by quitclaim deeds, without mentioning the restrictions.

On February 8th, 1918, Gordon *et al.* recovered title to lot thirteen by the foreclosure of their purchase-money mortgage from Igo *et al.*, and on December 22d, 1918, deeded the same to the defendants by warranty deed without mention of restrictions. The defendants at the delivery of this deed had no knowledge of any restrictions on the land except such as the law imputes from the deeds of record.

On March 9th, 1916, Deutsch *et al.* gave a purchase-money mortgage to Gordon *et al.* on the land conveyed by Exhibit A. This deed contained no mention of restrictions. After March 9th, 1916, Deutsch *et al.*, or their grantee, mortgaged to various parties, respectively, lots eight, seven, five and two, respectively subject to the restrictions contained in Exhibit A. Gordon

*et al.* later released these lots and others from their purchase-money mortgage, stating in the release that it was not to affect the restrictions in Exhibit A.

On August 15th, 1917, Deutsch *et al.* conveyed by deed to A. Podoloff lots one to eight, inclusive, in trust for many creditors, with power to sell, mortgage and care for the property. Later, Podoloff, trustee, sold lots three, four, seven, eight and six, subject to restrictions, and lot one without mentioning restrictions.

At the time of the institution and trial of this suit, and for a long time prior thereto, all the dwelling-houses respectively located on lots designated as lots one to twelve, inclusive, were single-family dwelling-houses, and occupied and used by one family only, and there were no two-family, double or duplex dwelling-houses, and no dwelling-houses occupied or used by more than one family, on the lots one to thirteen inclusive, and, so far as the evidence showed, there have never been any but one-family houses on said lots.

Many owners of lots in the square, including all the plaintiffs in this action, knew before purchasing or acquiring their respective lots of land that the land in the square was subject to these restrictions. This knowledge was an inducement to them to purchase or acquire their land, and was relied upon by them in so acquiring or purchasing the same.

The defendants at the time of the issuance of the temporary injunction were about to build, and now desire to build, on lot number thirteen, a wooden structure of this character, viz.: a single building of wood having one continuous roof with a solid party wall extending from the bottom of the cellar to the roof. This party wall has no doors, openings or other means of communication between the two parts of the building. Each side of the party wall has separate entrances and exits. The building on each side of the wall is designed

to be a complete abode for one family. Each family is to have separate plumbing and toilet facilities, and each side of the party wall is designed to be a complete, independent and separate abode for one family. Such a house is known as a duplex house.

*Frank S. Bishop,* for the appellants (defendants).

*J. Dwight Dana* and *David L. Daggett,* for the appellees (plaintiffs).

CURTIS, J. The court did not find that Gordon *et al.* divided their land in the square into lots on a map made public, under a plan disclosed thereon or therewith to develop the property as a restricted residential district, to be secured by a covenant, embodying the restrictions, to be inserted in each deed to a purchaser, which covenants appear by the writings or surrounding circumstances to be intended for the benefit of all the land, and that each purchaser is to be subject to and have the benefit of the restrictions, and that such a covenant was to be inserted in all deeds of the land. Therefore the body of law relating to a development scheme or plan, where such a course as outlined above was followed by the developers, has no direct application to this case. *De Gray* v. *Monmouth Beach Club House Co.,* 50 N. J. Eq. 329, 340, 24 Atl. 388.

Nor do the facts found bring the case within the class of cases where a tract of land is put up for sale in lots, subject to a condition that restrictive covenants are to be entered into by each purchaser, and that the vendor intends at the sale to sell the whole tract, as in *Nottingham Patent Brick & Tile Co.* v. *Butler,* L. R. 16 Q. B. Div. 778, 784. The court found that "the restrictions in . . . Exhibits A and B are for the common and mutual benefit of all lot owners and of all who should

become lot owners," and also found that "the defendants, at the time of the delivery of the deed aforesaid, had no knowledge of any incumbrance or restriction on the land contained in their deed, defendants' Exhibit 2, except such knowledge as the law imputes to them from deeds of record."

We interpret the first paragraph of this finding to mean that the parties to Exhibit B (the deed of Gordon *et al.* to Igo *et al.*) planned and intended that the restrictions in the deed should be for the common and mutual benefit of all owners of lots that should be carved out of the parcel so conveyed, and that the parties to Exhibit A had the same plan and intent as to the parcel conveyed by Exhibit A.

The defendants complain that this finding is not supported by the subordinate facts found. We are satisfied that the subordinate facts and necessary inferences therefrom support this finding. Gordon *et al.* purchased the land to sell for residential purposes at a profit; they believed that a residential district restricted in accord with the restrictions inserted in Exhibits A and B would make the property in the square more desirable for residential purposes and more valuable; in view of these and other surrounding circumstances, the above finding as to the plan and intent of the parties was justified.

Furthermore, we find that it is a necessary inference from the facts found that Gordon *et al.* and Igo *et al.*, the parties to Exhibit B, planned and intended that the restrictions as to the parcel sold should create an equitable right in the nature of an easement, attached to the land in the square then remaining in Gordon *et al.*, to enforce such restrictions.

Under the finding, therefore, restrictions contained in the deeds of Gordon *et al.* to Igo *et al.* and to Deutsch *et al.*, respectively, were meant and understood by the

parties to be for the common and mutual advantage respectively of the purchasers of the parcels and their grantees, and, further, it was their intent and plan that the purchasers of the parcel conveyed by Exhibit A should have an equitable right to enforce the restrictions contained in Exhibit B.

Where an owner of land deeds a parcel of land adapted and intended by the parties for division into lots for a residential district, and imposes restrictions upon the use of the land in the parcel, with the intent that such restrictions are imposed for the purpose of improving or rendering more beneficial and advantageous the occupation of the estate granted, when it should be divided into separate parcels and be owned by different individuals, and when also the manifest object of such a restriction on the use of an estate was to benefit another tract of the grantor adjoining the land on which the restriction is imposed, the restrictions imposed constitute a perpetual restriction in the nature of an easement attached to lots carved out of the land so conveyed, and to the lots carved out of the adjoining tract owned by the grantor, when he conveyed the parcel subject to restrictions with the intent of the parties as above stated. *Jewell* v. *Lee,* 96 Mass. (14 Allen) 145, 149.

Under the finding, and in accord with the law just outlined, the purchasers of the lots in the square from Igo *et al.,* or their successors in title, became subject to the restrictions, and had the benefit of the restrictions found in Exhibit B as to each other purchaser of a lot from Igo *et al.* and their successors in title. So, also, each purchaser of a lot in the square from Deutsch *et al.,* or their successors in title, had the benefit of the restrictions found in Exhibit B as against all lot holders deriving title through Exhibit B, because the restrictions in Exhibit B, under the law above stated, became

attached as an equitable right to the land in the square retained by Gordon *et al.* when they executed Exhibit B. Therefore all the parties to this action, since they derived their titles through Exhibits A or B, were entitled to enforce the restrictions in Exhibit B against a lot owner in the square deriving title through Exhibit B. See, generally, 1 Jones, Law of Real Property in Conveyancing, § 750 *et seq.;* Berry on Restrictions on Use of Real Property, Chap. IX; 2 Devlin on Real Estate (3d Ed.) § 990e *et seq.;* 2 Tiffany on Real Property (2d Ed.) § 394 *et seq.*

A right to enforce a restriction of this kind would not be inferred to be personal where it could fairly be construed to be appurtenant to land. *McMahon* v. *Williams,* 79 Ala. 288.

Under the surrounding circumstances, the right to enforce the restrictions imposed by Exhibits A and B are not personal rights of Gordon *et al.,* but are attached to the land to the extent stated above. These equitable rights which are attached to the lots; cannot be destroyed as to purchasers of lots in the square, by subsequent acts of Gordon *et al.,* who exacted the restrictions when they deeded away all their interest in the square.

The defendants further claim that the foreclosure of lot thirteen by Gordon *et al.* and their acquisition of the title to that lot, extinguished the restriction on that lot created by the deed of Gordon *et al.* to Igo *et al.,* and that the subsequent deed of Gordon *et al.* of lot thirteen to the defendants, without the restriction, freed lot, thirteen from the restrictions.

We have already shown that the trial court properly held that the restrictions imposed in the deed of Gordon *et al.* to Igo *et al.* (Exhibit B) were not imposed for the personal benefit of Gordon *et al.,* but created an equitable right, appurtenant to all the land in the square conveyed by them, to have the restrictions enforced.

Under this interpretation of the effect of the restrictions, there remained in Gordon *et al.*, after their sale of their interest in the square, no power to discharge or affect the restrictions and the equitable right of lot owners to enforce them. The mere fact that Gordon *et al.*, by foreclosure or otherwise, acquired title to a lot in the square, did not give them a greater right to affect the equitable rights of other lot owners under the restrictions than any lot owner would have. As mortgagees foreclosing a lot, they acquired no better title than their mortgagor had. Berry on Restrictions on Use of Real Property, p. 45; *Bowen* v. *Smith*, 76 N. J. Eq. 456, 460, 74 Atl. 675. There was no merger of a dominant and servient tenement. *Wiegman* v. *Kusel*, 270 Ill. 520, 525, 110 N. E. 884. This claim is not tenable.

The defendants claim that the case of *Goodwin* v. *Hamersley*, 69 Conn. 115, 121, 36 Atl. 1067, by the use of the language quoted below, requires that the extent of a restrictive easement must fully appear in the language of the deed creating restrictions: "If there is a covenant creating such restrictive easements it must be shown by apt words, and words which fairly interpreted show a clear intent to create such an easement. 'It is only by the use of plain and direct language of the grantor, that it should be held that he created a right in the nature of an easement and attached it to one parcel as the dominant estate and made the other servient thereto for all time.'"

Upon examination of the case, it is apparent that the court did not intend to hold that the language in a deed, which it is claimed creates a restrictive easement, is to be read and construed independently of the circumstances attending and surrounding the transaction. The circumstances surrounding the transaction in that case were carefully and fully considered by the court in construing the restriction.

We do not find that *Goodwin* v. *Hamersley* creates any requirements, as to creating restrictive easements by deed, peculiar to this State. This claim of the defendants is not tenable. The record title of the defendants' lot would disclose the creation of the restrictions as to the parcel of land, from which their lot was carved, by the deed of Gordon *et al.* to Igo *et al.*, and that no legal release of the restrictions had occurred.

An examination by the defendants of the title of Gordon *et al.* to lot thirteen, would disclose that the lot was subject to the restrictions imposed in Exhibit B, and disclose the circumstance that the grantors in Exhibit B were the owners of practically all the land in a square in a residential part of a large city, coupled with the fact that the only fair construction that could be placed on the intent of the restrictions imposed by Exhibit B, would be that they were not personal, but were attached to land. This would put the defendants upon notice that their land was subject to the restrictions in Exhibit B, in behalf of owners of other land in the square. *McMahon* v. *Williams*, 79 Ala. 288.

The defendants claim that the terms of the restrictions reading "there shall not be erected on said land any building other than a private dwelling-house," and "that such dwelling-house shall not be occupied by more than one family," do not bar the erection of a so-called duplex dwelling-house as planned by the defendants.

The judgment enjoins the defendants from building a dwelling-house other than one designed, constructed and intended for occupancy by not more than a single family. We are satisfied that the construction of the restriction involved in the judgment as above, was the correct and necessary one.

The defendants claim that the situation of the defendants as to their lot and their proposed building project, is such as to render the judgment entered too

inequitable to be sustained. We do not find anything in the defendants' situation which entitles them to be freed from the effects of the restrictions resting upon them as owners of lot thirteen; we therefore do not find that the terms of the judgment should be modified.

There is no error.

In this opinion the other judges concurred.