## Town of Stamford *vs.* Mary C. Vuono.

Third Judicial District, New Haven, June Term, 1928.

Wheeler, C. J., Maltbie, Hinman, Banks and John Richards Booth, Js.

Argued June 8th—decided September 28th, 1928.

*Thomas J. Ryle,* for the appellant (plaintiff).

*Justus J. Fennel,* with whom was *George Dimenstein,* for the appellee (defendant).

BANKS, J.   The defendant is the owner of land with a dwelling thereon which adjoins a tract of land upon which the plaintiff is building a high school.   The defendant claimed an interest in a portion of the land upon which the high school was to be built, by virtue of certain restrictions created in deeds of the common grantor of both pieces of land, and the plaintiff brought this application asking for the appointment of a committee to ascertain the value of the defendant's claimed interest.   The plaintiff filed a remonstrance to the report of the committee, to which the defendant demurred; the court sustained the demurrer, accepted the committee's report and rendered judgment in favor of the defendant to recover $13,715.

One of the grounds of remonstrance to the acceptance of the report is that it does not contain facts which it is claimed are material and were admitted or undisputed.   The report states that the defendant's deed contains covenants similar to those contained in deeds to plaintiff's predecessors in title of a portion of its land.   This is true as to the nature of the covenants restricting in each case the use of the property conveyed, but the defendant's deed does not contain reciprocal covenants restricting the use of the property of her grantor such as are contained in the deeds of the property now owned by the plaintiff.   Since the absence of such reciprocal covenants in defendant's deed is material in connection with the restrictions claimed to exist upon the use of a portion of plaintiff's property, we shall treat the report as though it expressly set forth all of the restrictive covenants in defendant's deed.   In so far as the facts set up in the remonstrance were claimed to show a change in the neighborhood

making it inequitable to enforce the restrictions, they can be of no avail in view of the finding of the committee, not attacked in the remonstrance, that, despite a trend in the neighborhood toward smaller residences and the subdivision of a number of larger estates into smaller building lots, the vicinity of the defendant's house is still definitely a residential section. Other facts which the plaintiff claims should have been included in the report are either immaterial or evidential merely and their inclusion in the report would not have affected the committee's finding of ultimate facts.

The remonstrance also alleged that the report did not contain certain rulings of the committee admitting evidence of the market value of the defendant's house which was objected to upon the ground that the land upon which the high school is built was not subject to any restrictions in favor of the defendant. This was the fundamental question in the case, which was raised in another portion of the remonstrance and there ruled upon by the court, so that the plaintiff was not harmed by the omission of these rulings from the report of the committee.

The plaintiff is not taking any of the land of the defendant in this proceeding. The land upon which its high school is built includes three lots which are adjacent to the defendant's land and it is the contention of the defendant that these lots are subject to certain building restrictions in favor of her property which are violated by the erection of a high school thereon. The plaintiff contends, first, that no such restrictions upon these three lots exist in favor of the defendant's property, and second, that if such restrictions obtained they are void as against public policy in so far as they prohibited the erection of a high school or other municipal building upon the restricted property.

The following facts appear from the report of the committee: The plaintiff's high school is located in part upon land which, together with the land of the defendant, was formerly part of a single tract of land, containing about ten acres, owned by one Betts. The defendant's land lies north of the high school site, being separated from it by a private road formerly a part of the ten-acre tract. The land immediately south of the private road, which is now a part of the high school site, was divided by Betts into three lots, shown upon the map, defendant's Exhibit 1, as tracts A, B and C. Betts transferred tract A to one Thamer and tract B to one Metcalf. The deed to Thamer recited that it was given and accepted upon certain "restrictive covenants and agreements which shall run with the land and be binding upon the grantee, his heirs and assigns forever," among which were covenants that the premises should be used for residential purposes only and that no more than one single family private residence with outbuildings should be constructed on the premises conveyed. The deed to Metcalf contained similar restrictive covenants with a recital that they should run with the land and be binding upon the grantor and the grantee and their respective heirs and assigns. The deeds from Betts to Thamer and Metcalf both contained reciprocal covenants restricting the remaining land of the grantor to residential purposes, the restrictions being similar to those imposed upon the land conveyed in those deeds. Subsequently Betts conveyed to the defendant the land north of tracts A, B and C and separated from them by the private road. The defendant's deed contained covenants similar to those in the Thamer and Metcalf deeds restricting the use of the premises conveyed to residential purposes, but did not contain any covenants similar to those in the Thamer and Metcalf deeds restricting the use of

the remaining land of the grantor in favor of the land conveyed to the defendant. Thereafter Betts conveyed tract C to the plaintiff without restrictions, but excepting from his warranty any rights to the enforcement of restrictive covenants which the defendant may have acquired by virtue of his deed to her, and Thamer and Metcalf conveyed tracts A and B to the plaintiff by deeds containing similar exceptions and without restrictions.

The plaintiff challenges the right of the defendant to enforce any restrictions upon the use of tracts A, B and C. Its contention is that there is here no general development scheme or plan, and therefore no mutuality of covenant between the defendant and Thamer and Metcalf, the grantees in the deeds containing the restrictions upon tracts A and B, and no reciprocal covenants in the defendant's deed from Betts restricting his remaining land which included tract C. For our present purposes restrictive covenants of this character may be divided into three general classes: First, when there are mutual covenants in deeds exchanged between owners of adjoining lands; second, when under a general development scheme the owner of property divides it up into building lots to be sold under deeds containing uniform restrictions, and third, where a grantor exacts covenants from his grantee presumptively or actually for the benefit and protection of his adjoining land which he retains. *Korn* v. *Campbell*, 192 N. Y. 490, 495, 85 N. E. 687. In the first class, either party or his assigns may enforce the restriction because there is a mutuality of covenant and the rights are reciprocal. *Trustees of Columbia College* v. *Lynch*, 70 N. Y. 440. In the second class, upon the same theory of mutuality of covenant and consideration, any grantee may enforce the restrictions against any other grantee. *De Gray* v. *Monmouth*

*Beach Club House Co.,* 50 N. J. Eq. 329, 340, 24 Atl. 388. In the third class, there is no mutuality between the grantees, if there are more than one, and therefore no right in one grantee to enforce the restrictions against another grantee upon that theory. But the original grantor (the owner of the property benefited) and his assigns may enforce them against subsequent purchasers of the property burdened. If the restrictive covenant is for the benefit of the remaining land of the grantor, it is an easement running with the land and may be enforced by a subsequent purchaser of the remaining land against the prior grantee and his successors in title upon the principle which prevents one having knowledge of the just rights of others from defeating such rights. *Baker* v. *Lunde,* 96 Conn. 530, 114 Atl. 673; *Bauby* v. *Krasow,* 107 Conn. 109, 112; 139 Atl. 508; *Whitney* v. *Union Ry. Co.,* 77 Mass. (11 Gray) 359, 364; *Tulk* v. *Moxhay,* 2 Phil. Ch. 774; 2 Pomeroy's Equity Jurisprudence (4th Ed.) §689; Berry on Restrictions on the Use of Real Property, 417; 1 Jones on the Law of Real Property in Conveyancing, §780; 2 Tiffany on Real Property (2d Ed.) §394; note in 21 A.L.R. 1284. The restrictions here under consideration fall under the third class. Those upon tracts A and B were created in the deeds from Betts to Thamer and Metcalf obviously for the benefit of the remainder of the ten-acre tract then retained by him. The defendant, as a subsequent purchaser of a portion of the remaining land, acquired as an easement running with the land the right to enforce the restrictions upon these two tracts not only against Thamer and Metcalf but against the plaintiff, their successor in title with knowledge of the existence of the restrictions. Her right to enforce them does not depend upon whether the lots were sold in pursuance of a general scheme of improvement, nor upon the existence of any

reciprocal covenants in her own deed from Betts. This right was not affected by the personal release of all his rights to enforce these restrictions contained in the deed from Betts to the plaintiff of tract C. *Armstrong* v. *Leverone,* 105 Conn. 464, 471, 136 Atl. 71.

Tract C being a part of the remaining land belonging to Betts at the time of his deeds to Thamer and Metcalf, was subject to the restrictive covenants contained in their deeds which were easements appurtenant to the land conveyed to them, being tracts A and B. When the defendant received her deed from Betts, tract C was a part of his remaining land, but since his deed to her contained no covenants restricting the use of his remaining land, the defendant did not acquire by virtue of that deed any easement appurtenant to the land conveyed to her restricting the use of tract C. The court therefore should have sustained the remonstrance of the plaintiff to that portion of the committee's report which held that the defendant had a right to enforce any restrictions upon the use of tract C.

The claim of the plaintiff that the restrictions upon tracts A and B are no longer enforceable because of a change in the neighborhood is negatived by the finding of the committee that the vicinity of the defendant's house is still definitely a residential neighborhood.

The plaintiff also contends that these restrictions, in so far as they prohibit the erection of a high school or other municipal building upon the restricted property, are void as against public policy. The argument in support of this contention is that no contractual agreement between the owners of property should be permitted to prevent the use of that property by an agency of the State when its use is required in the exercise of a governmental function, that to require the State to make compensation for the right taken

would interfere with this governmental function, and therefore should not be permitted. The fallacy of the argument lies in the asssumption of its minor premise, that the requirement that the State compensate the owner of the dominant tenement for the taking of his interest in the servient tenement actually interferes with the exercise of any governmental function. There is, of course, a clear distinction between the rights of the private owner of land which is subject to a restrictive easement and those of a governmental agency which requires for public purposes the use of the land in violation of the restriction. The private owner may not violate the restriction; if he attempts to do so he may be restrained by injunction. The governmental agency may not be restrained from making such use of the property as the public purpose for which it is acquired may require, but if that involves the taking of private property it must make compensation for the same. When, therefore, property subject to a restrictive easement is taken for a public use, it has been held that the owner of the property for whose benefit the restriction is imposed is entitled to compensation. *Ladd* v. *Boston*, 151 Mass. 585, 24 N. E. 858; *Flynn* v. *New York, W. & B. Ry. Co.*, 218 N. Y. 140, 112 N. E. 913, Ann. Cas. 1918B, 588; *Allen* v. *Detroit*, 167 Mich. 464, 133 N. W. 317; *Peters* v. *Buckner*, 288 Mo. 618, 232 S. W. 1024, and note to same in 17 A.L.R. 543; *Kirby* v. *School Board for Harrogate*, L. R. (1896) 1 Ch. 437; *Long Eaton Recreation Grounds Co.* v. *Midland Ry. Co.*, L. R. (1902) 2 K. B. 574; 1 Lewis on Eminent Domain (3d Ed.) §224; 1 Nichols on Eminent Domain (2d Ed.) §121. The case of *Doan* v. *Cleveland Short Line Ry. Co.*, 92 Ohio St. 461, 112 N. E. 505, cited upon plaintiff's brief, held that a railway company, acquiring, under its right of eminent domain, property subject to building restrictions, was

not bound to compensate the owners of the property for whose benefit the restrictions were imposed, on the ground that to require compensation would prevent the State from devoting the property to a public use and prevent the exercise of the right of eminent domain. As already indicated, we are unable to agree that such result would follow. The *Doan* case relies upon *United States* v. *Certain Lands,* 112 Fed. 622, which was affirmed, *sub nom., Wharton* v. *United States,* in 153 Fed. 876. The decision of the Circuit Court of Appeals was based upon its conclusion that the restrictions in question were not violated by the use to which the property was to be put by the government, and the question discussed in the opinion of the court below as to whether the restrictions were void as contrary to public policy was not passed upon. The holding that when land subject to such restrictions is taken for a public use the owner of the dominant tenement is entitled to compensation is of course based upon the theory that such a restriction is in the nature of an easement, and being an interest in the land taken is property for which compensation must be made. "The rule that private property may not be taken for public purposes without just compensation applies to all kinds of property and every . . . right or interest in property which has a market value." *Campbell* v. *New Haven,* 101 Conn. 173, 125 Atl. 650. Such restrictions are in the nature of an easement constituting an interest in the land upon which they are imposed. *Baker* v. *Lunde,* and *Bauby* v. *Krasow, supra; Riverbank Improvement Co.* v. *Chadwick,* 228 Mass. 242, 117 N. E. 244; 1 Lewis on Eminent Domain (3d Ed.) §65; 1 Nichols on Eminent Domain (2d Ed.) §121; 20 Corpus Juris, p. 655, §131. It follows that the defendant is entitled to compensation for the taking by

the plaintiff of her equitable easement in tracts A and B, but has no such easement in tract C.

The just compensation to which the property owner is entitled when his land is taken is ordinarily measured by the market value of the land taken. When an easement appurtenant to land is taken, the measure of damages is the depreciation in the value of the dominant tenement. *Neff* v. *Pennslyvania R. Co.*, 202 Pa. St. 371, 51 Atl. 1038. This is shown by the difference in the fair market value of the property before and after the taking. The committee found that the fair market value of defendant's property before the taking was $50,000 and after the taking $40,000, the difference being $10,000. The report, in paragraph thirty-six, recites that the defendant is a person of large means and constructed this house in a very expensive manner in accordance with her personal tastes and idiosyncrasies; that imported tile was used and special open plumbing in the bathrooms, and a spacious and beautifully equipped sun parlor built, with the intention of enjoying the outlook over tracts A, B and C, which now looks out upon the brick wall of the high school seventy-five feet away, and states that, in the opinion of the committee, the defendant's enjoyment of her premises "in the manner and to the extent that her individual means have heretofore . . . dictated has been curtailed by the 'taking' of said tracts."

The committee made the defendant an additional award of $3,000, for what it termed her "individual damage" caused by this curtailment of her enjoyment of her house so constructed to suit her personal tastes and idiosyncrasies. The defendant is not entitled to any personal or individual damage in addition to the depreciation in the value of her property caused by the removal of the building restrictions upon the adjacent property of the plaintiff. Such depreciation is the full

measure of her damage. In so far as such curtailment of enjoyment is personal to the occupant of the premises and does not affect their value, it is not an element of damage. 2 Lewis on Eminent Domain (3d Ed.) §751. She is, however, entitled to the actual depreciation in the value of her property suffered by reason of the fact that these restrictive easements are no longer appurtenant thereto. Ordinarily such depreciation would be a depreciation in market value. It may well be that, owing to the expensive character of the construction of defendant's house to suit her personal tastes, the market for it would be so very limited that its fair market value would fall far short of just compensation to the owner if it were being taken by eminent domain. *State* v. *Suffield & Thompsonville Bridge Co.,* 82 Conn. 460, 467, 74 Atl. 775. Of course that is not the situation here. The defendant retains her house. Her enjoyment of its use has been curtailed by the taking of the appurtenant easement. In determining the amount by which such taking has diminished the value of the defendant's property, however, the committee may properly consider the facts set forth in paragraph thirty-six of the report as affecting the actual loss suffered by the defendant which may not be reflected in the difference in market value, but they may not be made the basis of an award of personal or individual damages in addition to the amount awarded for depreciation in actual value of the premises themselves.

The committee awarded the defendant interest upon the amount of damages assessed in her favor from April 26th, 1927, the date of the commencement of the proceedings to condemn the defendant's interest in the tracts under restriction. These proceedings were brought under §5186 of the General Statutes, which provides that the property condemned shall not be

used by the petitioner until the amount of the judgment has been paid to the party to whom it is due, or deposited for his use, and that upon such payment or deposit the property shall become the property of the petitioner. There is no legal taking of the property until such payment or deposit is made unless the owner has actually been deprived of the use of his property prior to that date, in which case interest runs from the date of such deprivation. *Bishop* v. *New Haven*, 82 Conn. 51, 76 Atl. 646; *Fox* v. *South Norwalk*, 85 Conn. 237, 82 Atl. 642; *Woodward* v. *New Haven*, 107 Conn. 439, 140 Atl. 814. The plaintiff had acquired the restricted land before these proceedings were begun, but that constituted no invasion of defendant's rights. The defendant is entitled to interest from the time that the plaintiff commenced the erection of the high school, which date does not appear in the committee's report.

There is error and the cause is remanded to be proceeded with according to law.

In this opinion the other judges concurred.