[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Shippan Point Association, Inc., Robert W. Green and Verna M. Green, have brought an injunction action against Charles McManus and Lynne McManus, defendants. Plaintiffs seek a determination that a dwelling the defendants propose to construct at 74 Saddle Rock Road in Shippan Point, a residential section of Stamford fronting on Long Island Sound, violates a certain restrictive covenant. The complaint as amended alleges that Shippan Point Association, Inc. is a non-stock corporation composed of residents of Shippan Point, and that the Greens, who reside at 58 Rogers Road, Stamford, are members thereof.
The plaintiffs contend that the defendants' property was originally conveyed by the Shippan Point Land Company (SPLC) to Bohannon, and that the deed conveying the property contained a provision that "there shall not be erected or maintained thereon any building other than (1) a dwelling house arranged for and occupied by a single family. . . ." The Bohannon lot was combined with an adjacent lot formerly owned by Cummings and a thirty foot strip, and these combined properties were sold to Stein in 1913. In 1981, according to the complaint, the Stamford Planning Board approved an application for a four lot subdivision of the Stein property, and that one of the parcels, lot 3, was conveyed to the defendants, Mr. and Mrs. McManus, on July 1, 1991, by a deed containing the restrictive covenant recited above. CT Page 2798
The plaintiffs claim mat a house has been in existence for many years on the former Bohannon property, and that another house was recently constructed on the former Cummings lot, thereby preventing the McManuses from erecting a third dwelling. Plaintiffs alleged irreparable damage and no adequate remedy at law, and they seek a permanent injunction restraining the defendants from building a new residence on their property.
The defendants filed several special defenses claiming that: (1) the plaintiffs failed to take any action to enforce the restriction within the three years prescribed by General Statutes 52-575a for the enforcement of recorded private restrictions ("commenced within three years of the time that the person seeking to enforce such restriction had actual or constructive knowledge of such violation"); (2) the plaintiffs are barred by laches and waiver from pursuing this action, again because they waited ten years after the subdivision approval; (3) the restriction is unenforceable because of a change in circumstances in the neighborhood; and (4) it would be inequitable to grant an injunction under the theory of "comparative injury or relative hardship."
The case was referred to Attorney Saul Kwartin, an attorney trial referee, in accordance with General Statutes 52-434(a) and Practice Book 428 et seq. Hearings were held over the course of three days, and approximately thirty-five exhibits were introduced. Thereafter, the attorney trial referee filed his report containing a number of findings of fact, including that: (1) SPLC sold a lot to Cummings in 1911, and an adjacent lot to Bohannon in 1913; that both lots were conveyed to Stein that same year, and that in 1914 SPLC sold an adjacent thirty foot strip to Stein, and therefore the Stein property in 1914 consisted of three acres, and that a large single family residence was constructed thereon in 1915; (2) the Greens own a lot originally conveyed by SPLC to Flemming in 1920, which is not adjacent to the Stein property, and is about 500 feet away; (3) after the Planning Board in 1981 approved a four lot subdivision for the Stein property, an appeal followed, which was settled by an agreement for a three lot subdivision; (4) the Greens purchased their property in 1979 while the appeal was pending, and knew of the ultimate settlement and approval of the three lot subdivision in 1981, well before the three years prior to their commencement of this action in 1991; (5) the contract for lot 3 signed by the McManuses referred to covenants and restrictions of record; (6) the lawyer who represented the defendants conferred with the attorney for the plaintiffs in another case in which this same restriction against a second dwelling on the same lot was upheld, but that the conversation was restricted to zoning matters and they did not discuss the covenant against more than one dwelling per lot; (7) the McManuses did not know of the existence of the restriction in CT Page 2799 question; (8) there presently exists a rental home on lot 3, and the defendants intend to either demolish that structure and erect a new home, or seek a variance from the Board of Appeals permitting the building of another home at the rear of the lot; (9) a number of lots in the area in question have been subdivided over the years, and therefore any uniform scheme of development "has materially changed"; and (10) the construction of a new house by the defendants will not adversely affect the neighborhood.
The attorney trial referee concluded on the basis of his findings of fact that the plaintiffs were not entitled to an injunction against the construction of a new house by the defendants for essentially three reasons: (1) there had been significant changes in the neighborhood because of numerous violations of the covenant against a second dwelling; (2) laches on the part of the plaintiffs because they failed to enforce the restriction in a timely fashion; and (3) the three year statute of limitations contained in General Statutes 52-575a had tolled.
In accordance with Practice Book 438, both the plaintiffs and the defendants moved to correct the attorney trial referee's report. The motion filed by the defendants sought several minor corrections, in addition to a request for a finding that the issuance of an injunction, as sought by plaintiffs, would be inequitable under the "doctrine of comparative hardship." The motion to correct filed by defendants was granted in all respects.
The plaintiffs sought a number of corrections to the attorney trial referee's findings of fact. These requested corrections include the following: (1) the attorney who represented the defendants at the closing discussed with a number of people the outcome of a similar case involving the same restriction; (2) there had been virtually no recent changes in the neighborhood in violation of the restrictive covenant; (3) the restrictive covenant is not violated by a municipal authority's granting of subdivision approval, but rather only by an actual attempt to construct a second dwelling on the subdivided lot; and (4) the McManuses knew, either actively or constructively, of the existence of the restrictive covenant since it was mentioned in their contract and deed.
The referee made several corrections in his report in response to the plaintiffs' motion by noting that twenty-five building lots were originally created by SPLC, the last lot having been conveyed in 1931. The supplemental report also pointed out that on lot 3, now owned by the McManuses, there presently exists a gardener's cottage constructed around 1915 as an accessory structure to the main house on the Stein property, and that the cottage has been rented to others by the McManuses after CT Page 2800 their purchase of lot 3 in 1991.
Pursuant to Practice Book 439, the plaintiffs then filed exceptions to the report asking this court to correct the report, and filed excerpts from the required transcript. The defendants moved to strike the exceptions because the entire transcript had not been filed, and no agreement had been reached regarding filing only a portion thereof. Practice Book 439. This motion was denied, and the balance of the transcript was thereafter filed. The exceptions filed by the plaintiffs assert that the attorney trial referee erred by failing to make the corrections set forth in their motion to correct, including his finding of certain facts for which there was no evidence, and also by failing to find other material facts which were either admitted or undisputed. Practice Book 440.
The plaintiffs also filed objections to the acceptance of the report, Practice Book 440, on the grounds, among others, that: (1) there was no basis in the record for the attorney trial referee's finding that changed circumstances in the area of the restriction warranted abandonment of the restrictive covenant, (2) the referee erred in finding that neither the defendants nor their closing attorney knew of the restrictive covenant in issue, and that he erred in failing to find that the defendants knowingly and willfully are attempting to violate the restriction; (3) the record fails to justify a conclusion that the construction of a new home on lot 3 would not materially affect the neighborhood; and (4) there was insufficient justification for the conclusions that the plaintiffs may not enforce the restriction due to "laches" and due to the tolling of the three year statute of limitations, General Statutes 52-575a.
It should be noted at this point that this court's authority in reviewing an attorney trial referee's recommendations is a limited one. As our Supreme Court held in Dills v. Enfield, 210 Conn. 705, 714,557 A.2d 517 (1989): (1) the trial court may not "retry the case"; (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the (referee) has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear"; and (3) a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716. However, it is also true that "a referee's determinations of law in his or her report are not binding on the court . . . (which) has the power to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee . . . we therefore conclude that the trial court has the inherent authority . . . to render whatever judgment was appropriate in light of the facts found by the CT Page 2801 attorney trial referee." (citations and internal quotation marks omitted). Id., 713.
This court's task, according to Bernard v. Gershman, 18 Conn. App. 652,656, 559 A.2d 1171 (1989), is to determine whether the conclusions of fact and law on the referee's report "are legally and logically correct and whether they find support in the facts found by the referee." Practice Book 440. This procedure would appear to be similar to that employed by an appellate court in reviewing a decision of the trial court. "On appeal, our review is limited to a determination of whether the trier's findings are clearly erroneous. . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . ." (citations and internal quotation marks omitted). Fortier v. Newington Group, 30 Conn. App. 505, 509, ___ A.2d ___ (1993).
The resolution of this case necessarily involves a review of Contegni v. Payne, 18 Conn. App. 47, 557 A.2d 122, cert. denied, 211 Conn. 806,559 A.2d 1140 (1989), which involved the same area of Shippan Point and the very same restrictive covenant at issue in this case. Before analyzing this case however, we will comment on the special defenses filed by the defendants. As has been noted, the attorney trial referee agreed that these special defenses precluded the granting of an injunction.
The first defense claimed that there had been a number of purported violations of the one lot/one dwelling restriction in the Saddle Rock Road area in Shippan Point, which justified the abandonment of the covenant. In Contegni the issue of changed circumstances was discussed in the context of whether a uniform plan of development had been imposed. The context of this case is whether an injunction should be issued. "Change in circumstances, such as use of the benefited property for purposes other than those contemplated by the original covenant, may justify the withholding of equitable relief to enforce a covenant . . . the test is whether the circumstances show an abandonment of the original restriction making enforcement inequitable because of the altered condition of the property involved." Grady v. Schmitz, 16 Conn. App. 292, 302,547 A.2d 563, cert. denied, 209 Conn. 822, 551 A.2d 755, appeal after remand, 21 Conn. App. 111, 572 A.2d 71, cert. denied,215 Conn. 806, 576 A.2d 537, appeal after remand,27 Conn. App. 917, 608 A.2d 104 (1988). The only recent changes in the area were the construction of one dwelling CT Page 2802 on the former Stein property, which was in accordance with the restrictive covenant of one lot/one dwelling, and the resolution of the dispute in Contegni v. Payne, supra, when the title insurance company purchased the Contegni lot and extinguished the restriction. I therefore disagree with the conclusion that changed circumstances warrant withholding injunctive relief.
As to "laches" and the alleged tolling of the statute of limitations in General Statutes 52-575a, the plaintiffs contend, and I agree, that the restriction pertains to construction of more than one dwelling on a lot. The approval of a proposed subdivision by a municipal agency, here the Planning Board of Stamford, does not in and of itself constitute a violation of the restrictive covenant and thereby set in motion the three year limitation period in the statute, nor does it trigger the doctrine of laches. As soon as it became evident that the defendants planned to construct a new home, the plaintiffs commenced this suit.
With regard to the doctrine of "comparative hardship," this defense was not even raised in Contegni even though the defendants in that case had actually already built a new structure on their premises. By way of contrast, the McManuses have not yet built a new house. Moreover, both the sales contract and the McManuses' deed specifically refer to the restrictive covenant, and the Contegni decision was decided before the defendants purchased lot 3. It is therefore difficult to understand how the defendants could avail themselves of the "comparative hardship" theory referred to, for example, in Bauby v. Krasow, 107 Conn. 109, 116,139 A. 508 (1928). In that case the plaintiff knew the defendant was in the process of constructing a house, but never sought a temporary injunction until after the house was completed. In the instant matter no such construction has taken place, and as soon as the plaintiffs learned of the defendants' plans they sought an injunction as prayed for in this complaint.
As to the controversy concerning whether the closing attorney for the defendants knew of the outcome of the Contegni case, plaintiffs quote from the transcript of that attorney's testimony as follows: "Q. What was your purpose of your contacting Mr. DeLuca [the attorney for the plaintiffs in Contegni v. Payne]? A. I don't remember the exact reason why I contacted him. It was something to discuss with the Contegni versus Payne case, as to the outcome of that." However, even accepting the referee's finding that neither the closing attorney nor the McManuses knew of the restrictive covenant or the Contegni case, they were certainly on notice the restrictive covenant, as both the contract and the deed made specific reference to the covenant. Thus, we disagree with the referee's conclusions regarding the special defenses because, even accepting his CT Page 2803 findings of fact, the law relating to the special defenses appears to warrant opposite conclusions.
Turning now to the "retained land" theory as discussed in Contegni, we begin by noting that the intent expressed in a deed presented a question of law, because it turns on the construction of a deed rather than the credibility of witnesses. Id., 51. The Contegni court also held that the original grantor, SPLC, had imposed a uniform or general plan of development restricting each lot to one single family house, but that the boundaries of the deed restrictions were too vague and undefined to warrant enforcement of the restriction on this basis. ("The plaintiffs have failed to refer this court to any reason, defensible in logic and law, for finding that SPLC intended to delimit this area of uniform development in the way the plaintiffs have contended"). Id., 61.
The Contegni court did rule, however, that under the "retained land" theory, the Contegnis nonetheless had the right to enforce the restrictive covenant in question against the Payne property that was adjacent to their property. The issue in this case is whether the Greens have a right to enforce the restriction in the McManus deed under the retained land theory even though their property is not adjacent to that of the defendants, but rather is some 500 feet away. The attorney trial referee, in ruling in favor of the defendants, concluded that the Greens lacked standing to enforce the restriction in question because the Greens did not own property adjacent to the subject premises.
Contegni described the "retained land" theory as arising "[w]here the owner of two adjacent parcels conveys one with a restrictive covenant and retains the other . . . [i]f the covenant is for the benefit of the retained land it runs with the land and may be enforced by the successor in title to the conveyed land." (emphasis added). Id., 61. In Contegni, SPLC owned the plaintiff's lot on Saddle Rock Road at the time it conveyed the adjacent lot to Daly in 1929. The court held that the Contegnis, as successors to SPLC, could enforce the covenant against the Paynes, as successors to Daly, because "the covenant in Daly's deed was exacted by SPLC from its grantee, presumptively or actually for the benefit of the remaining adjoining land retained by SPLC." (emphasis added). Id., 62. Judgment entered for the plaintiffs, the Contegnis, because "[t]he restriction in the Daly deed inured to the benefit of the adjacent, retained land of the grantor, SPLC." (emphasis added). Id., 67. The retained land theory applies when a grantor conveys one parcel but retains the adjoining lot.
The Contegni court cited Baker v. Lunde, 96 Conn. 530, 536-37,114 A. 673 (1921), which also referred to restrictions that "benefit another CT Page 2804 tract of the grantor adjoining the land on which the restriction is imposed. . . ." (emphasis added). Another case discussing the retained land theory is Grady v. Schmitz, supra, where reference was made to adjoining land retained by the grantor. (". . . it was the intent of Walsh in exacting the covenant to benefit the adjoining land which he retained)." Id. 296 (emphasis added). Marion Road Association v. Harlow,1 Conn. App. 329, 472 A.2d 785 (1984), also concerned the imposing of a restrictive covenant, and also referred to "the owner of two adjacent parcels." Id., 325 (emphasis added).
Earlier cases involving this same theory are Bauby v. Krasow,107 Conn. 109, 113, 139 A. 508 (1927), and Stamford v. Vuono, 108 Conn. 359,365, 143 A. 245 (1928), both of which refer to the owner of two adjacent lots conveying one lot and retaining the other.
If there is a general development scheme, any grantee may enforce the restrictions against any other grantee. Under the retained land theory, according to Vuono, "there is no mutuality between the grantees . . . and therefore no right in one grantee to enforce the restrictions against another grantee . . . [b]ut the original grantor (the owner of the property benefited) and his assigns may enforce them against subsequent purchasers of the property burdened." Id., 365.
The Bauby case is cited in an annotation in 51 ALR3d 556 as authority for the proposition that: "[w]here the owner of two adjoining lots resided on one and conveyed the other by a deed restricting its use to a single family residence the character of the restriction indicates that it was intended for the benefit of the retained lot."
It therefore follows that the Greens, whose predecessors in title did not own land adjacent to the subject premises, have no right to enforce the restrictive covenant in issue. Thus, the recommendation of the attorney trial referee denying plaintiffs' application for an injunction enjoining the construction of a home on the defendants' premises on Saddle Rock Road is accepted and approved.
Judgment is entered in favor of the defendants denying the requested injunction. Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 23rd day of March, 1993.
William B. Lewis, Judge CT Page 2805