[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case, which was tried to the court, involves a view easement on Long Island Sound. The plaintiff, Kenneth A. Schwartz, owns property at 60 Saddle Rock Road, in the Shippan Point section of Stamford. The defendants, Karen A. Murphy and Katherine A. Murphy, live next door to the plaintiff at 68 Saddle Rock Road.
The plaintiff, who purchased his property in 1985, alleges that the defendants' property is subject to a view easement in his favor. According to the complaint, this easement arises from Map No. 12226, dated May 16, 1990, revised June 20, 1990, and entitled "Map Showing Adjustment of Property Lines Prepared for Spring Realty Corporation Stamford, Connecticut." This map, "which was recorded in the Stamford land records on June 27, 1990, contains a notation indicating that: "No accessory structure or view obstructions shall be placed in this area." The area in question is a small triangle, roughly 110 feet along its hypotenuse, 50 feet along another person's property, and 100 feet on the property line dividing the plaintiff's and the defendants' property.
The plaintiff alleges that the defendants have violated the easement because they permitted a hedge to grow over or above six feet in height and a large tree to remain in this triangular area. The plaintiff seeks a CT Page 12048 mandatory injunction requiring the defendants to keep their privet hedge trimmed to not more than six feet in height along the easement area, to remove the tree existing in the easement area, and to keep the easement area "free from blockage of any kind."
The defendants denied the material allegations of the complaint and filed a number of special defenses, including adverse use for over 15 years, abandonment, unclean hands, laches and a claim that the easement, if any exists, is "void for vagueness. The defendants also filed a counterclaim containing three counts. In the first count, the defendants seek "a judicial determination" of the existence and the scope of the alleged view easement. In the second count of the counterclaim, the defendants allege that they and their predecessors in title used the area of the easement for over 15 years in an open, notorious and hostile manner, thus extinguishing the easement. In the third count, the defendants seek to quiet title to their property by obtaining a decree that their property is not subject to an easement.
The issues in this case are, first, does a view easement exist, second, if so, may the plaintiff enforce this easement or restriction, and, third, have the defendants violated the easement by reason of the hedges and tree. First, as to the existence of the easement, the defendants obtained title to their property from Charles McManus and Lynne McManus by a warranty deed dated May 13, 1999, and recorded May 14, 1999, in volume 5267 at page 221, which states that the property is conveyed subject to "Restriction as to view obstruction and location of accessory structures affecting the southeasterly corner of the premises as shown on said map, 12226." Map number 12226 contains the notation referred to in the plaintiff's complaint and the easement area is located on "Lot No. 3," which belongs to the defendants.
Moreover, the property now belonging to the defendants was also conveyed to them subject to "Restrictive covenants and agreements set forth in a certain agreement between Faye Dunaway and John A. Contegni, et al, dated February 2, 1981 and recorded in Volume 2050 at Page 349." A predecessor in title to Faye Dunaway had received permission from the Planning Board of Stamford to subdivide her property consisting of 2.94 acres into several lots, one of which, lot #3, is now owned by the defendants. In granting this subdivision application, the Planning Board imposed a condition that a triangular area in the corner of what is now the defendants' property was subject to a view easement.
Several neighbors, including George P. Egbert and Judith B. Egbert, appealed this decision by the Planning Board to this court, but they ultimately withdrew their appeal after signing the above referred to agreement. The Egberts were the former owners of the plaintiff's CT Page 12049 property. Among other provisions, this so-called Dunaway-Contegni agreement stated that: "No dwelling, accessory structure or view obstruction shall be located in the triangular area 50' x 95' x 110' at the Southwesterly corner of said premises."[1] This agreement was recorded in the Stamford land records on June 26, 1981, in volume 2050 at page 349.
This same triangular area with the same restriction that is shown on Map no. 12224 is also depicted on a map numbered 10716 entitled "Showing subdivision of property prepared for Faye Dunaway." This map was recorded on June 26, 1981. The defendants acquired their property from McManus subject to the "Notations as shown on Maps Numbered 10716 and 12226."
Thus, the source for the view easement in favor of the plaintiff's property as the dominant estate and over the defendants' property as the servient estate is the deed by which the defendants obtained title to their property, which contains certain conditions or restrictions, i.e., (1) the notations on Map # 12224; (2) the agreement between Dunaway and her neighbors, including the predecessor in title to the plaintiff; and (3) the notations on Map # 10716, In addition, as mentioned previously, the Planning Board, in approving the subdivision, which includes the defendants' Lot # 3, imposed the same restriction regarding view obstruction at the corner of the defendants' property. This finding of a view easement across the defendants' property also answers their request for a judgment declaring their rights viz-a-viz the plaintiff and to quiet title; General Statutes § 47-31; by extinguishing the view easement.
The next issue is whether the plaintiff may enforce the condition or restriction existing in the triangular area of Lot # 3. Our Supreme Court in Stamford v. Vuona, 108 Conn. 359, 364, 143 A. 245 (1928), refers to a class of restrictive covenants involving "mutual covenants in deeds exchanged between owners of adjoining lands" and indicates that "either party or his assigns may enforce the restriction because there is a mutuality of covenant and the rights are reciprocal." To the extent that this doctrine is deemed inapplicable because the deed to the plaintiff did not refer to the view easement, the plaintiff is still able to enforce this restriction or condition because both the defendants' predecessor in title, Dunaway, and the plaintiff's predecessor, Egbert, signed an agreement establishing this restriction on the defendants' use of their property. Additionally, if the view easement is not for the benefit of the plaintiff's property, it is difficult to discern the identity of any other beneficiary. For these reasons, the contention by the defendants that the plaintiff has no right or standing to enforce the easement is not persuasive. CT Page 12050
The remaining issue is whether the defendants are violating this view restriction. In Abington Limited Partnership v. Heublein, 246 Conn. 815,831, 717 A.2d 1232 (1998), our Supreme Court quoted with approval the law of easements discussed in the Restatement (Third) of Property (Servitudes), § 4.10, which provides, among other things, that "the beneficiary of an easement . . . is entitled to make any use of the servient estate that is reasonably necessary for the convenient enjoyment of the servitude for its intended purpose.
The evidence indicated that along the boundary line between the properties of the plaintiff and of the defendants there is a privet hedge, which is located on the defendants' property. The plaintiff contends that if the defendants permit this hedge to grow more than six feet in height, his view of the Sound will be obstructed in violation of his easement. In addition, the plaintiff claims that the tree situated in the triangular easement area also obstructs his view of the water. Furthermore, the plaintiff complained of one or two shrub bushes which, if allowed to grow over six feet in height during the course of the summer, would obstruct his view easement.
The evidence further indicates that the hedge, which has been in existence a minimum of 22 years, is now about 15 feet in height for most of its length along the boundary line between the properties of the parties. Along the area of the view easement, however, the hedge is approximately five or six feet high, because the plaintiff himself, without permission of the defendants, cut down this portion of the hedge. A picture of the scene, which was admitted in evidence as an exhibit, vividly illustrates that if the hedge is kept at six feet in height, the plaintiff can readily view the water, but if allowed to grow much higher, the hedge will inevitably impinge on the view easement.
As for the tree, the evidence indicates that it is a "Siberian elm" which has been in existence for a minimum of 40 years and well before this view easement was created. There is no sound reason for this tree to be cut down as sought by the plaintiff.[2] On the other hand, a view easement does exist over the defendants' property and if the tree is allowed to grow without any trimming it will adversely affect the dominant estate, that is, the plaintiff's view easement.
Therefore, an injunction issues that the defendants shall keep their hedge, and any other bushes in the area of the view easement, to a height of not more than six feet, and shall also keep the tree trimmed and pruned so that it is reasonably similar in shape and height to the way it existed in September of 2000, when this lawsuit began. The defendants failed to prove any of the allegations of their counterclaim and hence judgment enters in favor of the plaintiff with respect to the CT Page 12051 counterclaim. No costs shall be taxed to either party.
So Ordered.
Dated at Stamford, Connecticut, this 30th day of August, 2001
William B. Lewis, Judge T.R.